Daniel L. ALLEN, Sr., Appellant,

v.

The STATE of Texas, State.

No. 2–00–193–CR.

Court of Appeals of Texas,
Fort Worth.

March 15, 2001.

Discretionary Review Refused
Aug. 1, 2001.

Michael Logan Ware, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Charles M. Mallin, Chief Appellate Asst. Criminal Dist. Atty., Sharon A. Johnson, Susannah Touzel, Lloyd Whelchel, Asst. Criminal Dist. Attys., Fort Worth, for appellee.

Panel A: CAYCE, C.J.; DAY and WALKER, JJ.

## OPINION

WALKER, Justice.

The State charged appellant Daniel Allen, Sr. with one count of attempted capital murder and one count of attempted murder. A jury returned a verdict of not guilty on the attempted capital murder count but found appellant guilty of attempted murder. The jury sentenced appellant to twenty years' confinement.

Appellant argues in three issues that his trial counsel provided ineffective assistance and that the trial court erred by not instructing the jury during the punishment phase on the reasonable-doubt standard concerning extraneous offenses and bad acts. We will affirm.

## STATEMENT OF FACTS

On the morning of March 19, 1999, Barbara Pagel, appellant's ex-wife, was driving to work. A car pulled up beside her on the left, and Pagel heard a bang. She looked to her left and saw appellant in the adjacent car shooting at her. He fired three shots at her and sped away. The third shot shattered the driver's side window of Pagel's car. The broken glass hit Pagel in the head, causing her to bleed. A passing motorist stopped and called police for Pagel.

## JURY CHARGE

In his third issue, appellant contends that the trial court erred by not instructing the jury during the punishment phase on the reasonable-doubt standard of proof concerning extraneous offenses and bad acts. He asserts that he suffered egregious harm from this trial court error.

### 1. Relevant facts.

During the guilt-innocence phase, the State introduced evidence that, after Pagel informed appellant of her intention to file for divorce, he began making harassing phone calls to her home,[1] driving past her house, following her to and from work, and throwing rocks at her car. The State also introduced evidence that in February 1999, less than a month before the shooting at issue, appellant fired three shots into Pagel's house at approximately 8:30 in the morning.

The State argued that appellant's motive for the present offense, shooting at Pagel in March as she was driving, was to retaliate against her for giving his name to police as a suspect in the February shooting. Thus, the State asserts that it introduced the extraneous offense and bad acts evidence to prove its theory of attempted capital murder.

The State presented no evidence of extraneous offenses or bad acts during the punishment phase. The trial court did not instruct the jury that for purposes of punishment they could consider the extraneous offense or bad acts evidence introduced at the guilt-innocence phase only if they found that appellant had committed such offenses or acts beyond a reasonable doubt. Appellant did not object to the trial court's failure to include this instruction.

### 2. The law concerning consideration of extraneous offenses and bad acts in assessing punishment.

■ Texas Code of Criminal Procedure, article 37.07, section 3(a) governs the admissibility of punishment phase extraneous offense and bad acts evidence. It provides, in part:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence*

---

1. Pagel was living with her daughter and son-in-law at the time.

*to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.*

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2001) (emphasis added). Pursuant to article 37.07, section 3(a), evidence of extraneous offenses or bad acts may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that such offenses are attributable to the defendant. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a); *see also Huizar v. State,* 12 S.W.3d 479, 484 (Tex.Crim.App.2000) (op. on reh'g); *Fields v. State,* 1 S.W.3d 687, 688 (Tex. Crim.App.1999). Once the fact-finder is satisfied beyond a reasonable doubt that such offenses or acts are attributable to the defendant, the fact-finder may use the extraneous offense or bad acts evidence however it chooses in assessing punishment. *Huizar,* 12 S.W.3d at 484; *see also Taylor v. State,* 970 S.W.2d 98, 101–02 (Tex.App.—Fort Worth 1998, pet. ref'd) (trial court gave proper punishment phase reasonable-doubt instruction concerning extraneous offense evidence).

■ Texas Code of Criminal Procedure article 37.07, section 3(a)'s requirement that the jury be satisfied of the defendant's culpability of the extraneous offenses or bad acts is "law applicable to the case" in the non-capital punishment context. *Huizar,* 12 S.W.3d at 484. Thus, the trial court is required, when punishment phase evidence of extraneous offenses or bad acts evidence is admitted, to *sua sponte* instruct the jury on the reasonable-doubt standard of proof concerning the extraneous offenses and bad acts. *Id.* at 483–84. The failure of the trial court to submit an instruction to the jury at the punishment phase on the reasonable-doubt

standard of proof concerning extraneous offense or bad acts evidence is error. *Id.*

### 3. Standard of review and analysis.

■ In the present case, extraneous offense and bad acts evidence was introduced at the guilt-innocence phase of the trial, not at the punishment phase as in *Huizar.* We do not find this distinction material. The State offered the extraneous offense and bad acts evidence at guilt-innocence to prove motive. In most cases, however, extraneous offense and bad acts evidence will become admissible only at the punishment phase. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a). If extraneous offense or bad acts evidence is before the jury, regardless of whether such evidence was introduced at the guilt-innocence or punishment phase, article 37.07, section 3(a) requires that the jurors be instructed not to consider such extraneous offenses or bad acts in assessing the defendant's punishment unless they find the defendant culpable for such offenses or acts under the statutorily prescribed reasonable-doubt standard. *Accord Huizar,* 12 S.W.3d at 484–85; *Fields,* 1 S.W.3d at 688. Because no such instruction was given in this case, we agree with appellant that the trial court's punishment phase jury charge was erroneous.

■ The error in failing to give the required punishment phase reasonable-doubt burden of proof instruction concerning the extraneous offense or bad acts evidence is not, however, "constitutional error." *Huizar,* 12 S.W.3d at 481–82. It is purely "charge error." *Id.* at 484–85. Accordingly, we apply the *Almanza*[2] harm analysis. *Id.* Because appellant did not object at trial to this error in the court's charge, under the *Almanza* harm analysis, we examine the entire record to determine

---

2. *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1985) (op. on reh'g).

whether the error was so egregious and created such harm that appellant did not receive a fair and impartial trial. *See Hutch v.. State*, 922 S.W.2d 166, 171 (Tex. Crim.App.1996); *Almanza*, 686 S.W.2d at 171; *see also* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981).

■ In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

The San Antonio Court of Appeals' opinion on remand in *Huizar* is instructive. The court of criminal appeals remanded *Huizar* to the San Antonio Court of Appeals for an *Almanza* harm analysis of the trial court's unobjected to error in failing to instruct the jury at the punishment phase on the reasonable-doubt standard concerning extraneous offenses. *Huizar*, 12 S.W.3d at 485. On remand, the San Antonio Court of Appeals noted that the State "relied on substantial evidence of extraneous conduct in seeking punishment" and commented during closing argument at the punishment phase of the trial that "the State had no burden of proof during the punishment trial." *Huizar v. State*, 29 S.W.3d 249, 250 (Tex. App.—San Antonio 2000, pet. filed). Nonetheless, the San Antonio Court held that based on the record as a whole and because the ninety-nine year punishment assessed by the jury was within the authorized range of punishment, it could not conclude that the error in failing to instruct the jury at punishment on the reasonable-doubt standard concerning extraneous offenses rose to the level of egregious harm.

■ Based on our review of the entire record of appellant's trial including the charge, the state of the evidence, the contested issues, the weight of probative evidence, the argument of counsel, and all relevant information revealed by the record of the trial as a whole, we are unable to conclude that the trial court's error in failing to instruct the jury in the punishment phase charge concerning the extraneous offense and bad acts burden of proof is so egregious and created such harm that appellant did not receive a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171.

The record reflects that appellant's trial counsel vigorously defended appellant. Appellant's trial counsel conducted an effective voir dire which resulted in nine jury panel members being excused for cause. Appellant's trial counsel conducted a detailed cross-examination of each State's witness. The jury returned a verdict finding appellant not guilty of the attempted capital murder charge.

The evidence at guilt-innocence showed that appellant fired three shots at Pagel while she was driving to work. The shooting occurred on a city street in moderate traffic at approximately 6:30 in the morning. Pagel was driving between 35 and 40 miles per hour when appellant pulled up beside her and fired three shots directly at the driver's side window of her car. Appellant was driving his car at the same time he was shooting at Pagel. These facts show that appellant endangered not only Pagel's life, but also the lives of other nearby passing motorists. This evidence tends to support the twenty-year sentence the jury imposed.

The State offered direct testimony that appellant was the perpetrator of the extraneous offense and bad acts evidence it offered at the guilt-innocence phase. A firearms' examiner proffered by the State testified that in his opinion, the projectiles recovered from appellant's car matched those recovered from Pagel's daughter's home following the February shooting. Pagel herself testified that after she divorced appellant he "would call constantly." Pagel taped one message left for her by appellant and called the police. Pagel also testified that appellant once drove alongside her and threw rocks, or some objects, at her car. According to Pagel, since appellant's March 19, 1999 arrest and incarceration, no one has shot at her, no one has been circling her house, and no one has been purposefully driving alongside her car.

At the punishment phase, Pagel testified that she had concerns about the possibility of appellant being placed on probation. Specifically, she testified, "I really fear for my life. I have been in pure torment ever since I told this man that we needed to get a divorce." She testified that she believed appellant would attempt to take her life if he was released from custody. Appellant called four witnesses at the punishment phase. Each testified that appellant should be given probation.

The court's charge to the jury at the punishment phase instructed the jurors that they could "take into consideration all the facts shown by the evidence admitted before [them]." The State argued at punishment that appellant was a threat to Pagel and Pagel was part of their community. The State utilized the extraneous offense and bad acts evidence, in addition to facts of the convicted crime, to argue that appellant is dangerous and should be given the maximum sentence. Appellant's trial counsel urged the jury to give appellant a chance to prove himself and to assess a punishment of ten years or less and to award probation. Neither the State nor appellant's counsel mentioned the statutorily applicable reasonable-doubt standard in their arguments.

The State's use of the extraneous offense and bad acts evidence in its punishment phase argument and the language in the jury charge authorizing the jury to "take into consideration all the facts shown by the evidence admitted before [them]" are troubling. These issues, however, are offset by the state of the totality of the evidence as set forth above. *See Huizar*, 29 S.W.3d at 251; *Frazier v. State*, 15 S.W.3d 263, 266 (Tex.App.—Waco 2000, no pet.). Given appellant's reckless disregard for human life as demonstrated by the present offense, it is very plausible that the jury sentenced appellant to twenty years' confinement on the facts of the convicted crime alone. The victim's expressed concern for her life if appellant were released from custody also lends credence to the jury's imposition of the maximum sentence.

The State's proof tying appellant to the extraneous offense and bad acts evidence also diminishes the harm appellant suffered by failing to receive an instruction to the jury that it should not consider such evidence unless it attributed such extraneous offenses and bad acts to appellant beyond a reasonable doubt. That is, because a firearms examiner expressed his opinion that the projectiles recovered from appellant's car for the present offense matched those recovered from Pagel's daughter's home following the February shooting, strong evidence existed that appellant was the perpetrator of the February shooting. Likewise, Pagel identified appellant as the person driving beside her and throwing rocks at her car, thus providing strong, direct, eye-witness testimony

that appellant committed this offense. Pagel herself identified appellant's voice on the message she recorded and provided to police, thus again providing strong, direct evidence attributing this bad act to appellant. It is difficult to ascribe "egregious harm" to the trial court's failure to instruct the jury not to consider extraneous offense and bad acts evidence in assessing punishment unless they found beyond a reasonable doubt that appellant committed such extraneous offenses or bad acts when clear-cut evidence credits appellant for these offenses and acts. The harm analysis would be more difficult if the record as a whole did not so clearly demonstrate appellant's responsibility for the extraneous offenses and bad acts introduced into evidence and argued at punishment by the State.

Finally, the jury's sentence was within the range of punishment for attempted murder and therefore does not demonstrate "egregious harm" to appellant. *Huizar*, 29 S.W.3d at 251.

Appellant argues that he was egregiously harmed by the punishment phase charge's failure to instruct the jury on the reasonable-doubt standard of proof because the jury's not-guilty finding on the attempted capital murder count necessarily means the jury possessed a reasonable doubt as to whether he was the person who committed the February shooting. The jury, however, could have believed beyond a reasonable doubt that appellant committed the February shooting and yet reasonably doubted whether retaliation was his motivation for committing the present shooting. We disagree with appellant that the jury's finding of not guilty on the attempted capital murder count dictates the conclusion that he was egregiously harmed by the lack of a punishment phase reasonable-doubt instruction.

We hold that based on the present record the trial court's error did not cause egregious harm. We overrule appellant's third issue.

## INEFFECTIVE ASSISTANCE

In his first and second issues, appellant argues that his trial counsel provided ineffective assistance. Specifically, he complains of counsel's failure to timely discover and investigate the State's scientific evidence and counsel's failure to request a jury instruction on the reasonable-doubt burden of proof concerning extraneous offenses and bad acts at the punishment phase of trial.

### 1. Standard of Review.

Appellant's claim that counsel's assistance was so defective as to require a reversal has two components. First, he must show that his counsel's performance was deficient; second, he must show the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex.Crim.App.1999).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. A defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* However, our scrutiny of counsel's performance must be highly deferential, and every effort must be made to

eliminate the distorting effects of hindsight. *Id.* at 689, 104 S.Ct. at 2065.

## 2. Failure to Discover Two Scientific Reports.

Appellant first complains that his trial counsel failed to file a pretrial motion to discover the results of scientific testing done by the State. He further argues that such a pretrial motion would have allowed his counsel to prevent the State's admission into evidence of two scientific reports, a gunshot residue report and a ballistics report, which were both derived from last-minute testing conducted by the State.

### a. Gunshot residue report.

The State offered into evidence an April 18, 2000 gunshot residue report setting forth the results of a gunshot residue analysis of appellant's hands. This report documented the *second* gunshot residue analysis performed on appellant's hands. The report stated that the results of the analysis on appellant's hands were inconclusive.

The report from the first analysis was dated October 4, 1999 and was provided to appellant's trial counsel in October, 1999, approximately six months before trial. While the October report does not mention the gunshot residue test results concerning appellant's hands, the trace analyst who conducted the test testified that the October results were also inconclusive. Appellant does not complain here, and he did not object in the trial court, to the admissibility of the October gunshot residue report. Because the results reflected in the October and April reports were the same, appellant has not shown that counsel's performance prejudiced him as required by *Strickland's* second prong. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

### b. Ballistics report.

The second report at issue concerns a ballistics test performed on bullets and bullet fragments recovered from the February and March shootings. According to the report, the same gun was used in both shootings.

The State introduced the ballistics report into evidence to connect appellant with the February shooting in an effort to prove its retaliation capital-murder theory. The jury, however, found appellant not guilty on this count. Therefore, appellant again cannot meet the second prong of the Strickland test. He has not shown that he was prejudiced by counsel's performance. We overrule appellant's first issue.

## 3. Failure to Request Punishment Reasonable–Doubt Instruction Concerning Extraneous Offenses and Bad Acts.

Appellant also claims that his trial counsel was ineffective because he failed to request the punishment phase reasonable-doubt instruction concerning extraneous offenses and bad acts. As discussed above, the trial court erred by failing to give such an instruction. *Huizar,* 12 S.W.3d at 484. Accordingly, appellant has satisfied the first prong of *Strickland.* Appellant's counsel's performance in failing to request this instruction was deficient.

For the reasons discussed previously in connection with appellant's third issue, we have determined that the trial court's erroneous failure to instruct the jury on the burden of proof concerning extraneous offenses and bad acts at punishment does not constitute "egregious harm." We explained that given the totality of the evidence and the record as a whole the jury's sentence of twenty years' confinement was supported by the record even in the absence of the extraneous offense and bad acts evidence.

Appellant therefore fails to satisfy the second prong of *Strickland*—that the result would have been different had the instruction been requested. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim. App.1999). Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.