OPINION




No. 04-02-00198-CR



Jose Fereyra GUZMAN,


Appellant



v.



The STATE of Texas,


Appellee



From the 341st Judicial District Court, Webb County, Texas


Trial Court No. 2001-CRP-00137-D3


Honorable Andres Reyes, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Paul W. Green, Justice

 Karen Angelini, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: October 15, 2003


AFFIRMED

 Jose Fereyra Guzman was convicted of aggravated assault and kidnaping. He argues that because
the State allowed potential witnesses to be deported, he was deprived of his right to compulsory process
to obtain witnesses in his favor. Guzman also argues that the trial court erred in admitting evidence of
extraneous offenses and in failing to instruct the members of the jury at the punishment phase to only
consider the extraneous offenses if they found beyond a reasonable doubt that Guzman committed them.
Finally, Guzman argues that his trial counsel provided ineffective assistance. We overrule all issues and
affirm the trial court's judgment.

Background


 Guzman was arrested for assaulting and kidnaping his common-law wife, Lucilla Gonzalez, by
beating her and keeping her and her children locked in a trailer in rural Webb County. Gonzalez testified
that in November of 2000, Guzman had threatened to kill her and her children unless she went with him
to the United States. Once across the border, Guzman found construction work on a ranch. On the ranch,
Guzman, Gonzalez, and her two young children moved into a small trailer that had no kitchen or bathroom
facilities. Several other undocumented workers were staying nearby. 

 Guzman did not allow Gonzalez to leave the trailer except occasionally for cooking. She used a
plastic bag to go to the bathroom. The trailer door was secured with a latch on the outside and a rope on
the inside; if Guzman found the inside rope untied, he would beat her. She stated that she was afraid he
would kill her if she tried to escape. Gonzalez also testified about other bad acts Guzman had committed,
both against her and against others.

 One day in December, Guzman beat Gonzalez especially severely. She escaped the next day,
leaving her children in the trailer. She ran to a nearby ranch, where the owner contacted law enforcement
authorities who arrested Guzman. The other undocumented workers were deported.

 The jury found Guzman guilty on both counts and sentenced him to thirteen years imprisonment for
aggravated assault and five years imprisonment for kidnaping, with the sentences to run concurrently. After
the trial, Guzman's trial counsel withdrew, and his appellate counsel filed a motion for new trial. At the
motion for new trial hearing, Guzman's trial counsel testified regarding her efforts to locate the other
undocumented workers who had been deported shortly after Guzman's arrest. The trial court overruled
the motion for new trial. Guzman appeals.

The Deported Witnesses


 On appeal, Guzman argues that the deportation of the other workers from the ranch deprived him
of his right to compulsory process for obtaining witnesses in his favor. Guzman, however, has waived this
issue.

 Before trial, Guzman moved for a continuance in order to have time to locate the deported
workers. The trial court granted the continuance; thus, Guzman cannot and does not complain that he was
denied a continuance in order to try to obtain the deported workers' testimony. Making no complaint about
the deported workers' absence, Guzman proceeded to trial without the benefit of their testimony. He failed
to move for dismissal of the indictment nor did he attempt to subpoena the deported workers as witnesses.
Although Guzman filed a motion for new trial, he never specifically stated he was seeking a new trial on the
grounds that he was denied compulsory process to obtain favorable testimony. At the hearing on the motion
for new trial, Guzman complained for the first time about the absence of the deported workers. However,
in order to complain on appeal, the record must show Guzman timely and specifically objected at the trial
court. Tex. R. App. P. 33.1. By waiting until the motion for new trial hearing, Guzman waived this issue. 

 Guzman argues on appeal, however, that he did not waive the issue. For support, Guzman cites
Texas Rule of Appellate Procedure 21.3(e), which requires the trial court to grant a new trial "when a
material defense witness has been kept from court by force, threats, or fraud . . . ." Tex. R. App. P.
21.3(e). Guzman contends the undocumented workers were kept from court by force. Guzman, however,
did not specifically invoke application of this rule at the trial court level. Furthermore, he fails to cite any
authority for his contention that this section applies to a situation in which possible witnesses have been
deported. Moreover, even if the issue had not been waived, Guzman's compulsory process argument fails. 

 A criminal defendant is guaranteed the right "to have compulsory process for obtaining witnesses
in his favor." U.S. Const. amend. VI. This right has been incorporated into the Due Process Clause of
the Fourteenth Amendment and, therefore, applies to state criminal prosecutions. See Washington v.
Texas, 388 U.S. 14, 18 (1967). The right to compulsory process is constrained by the requirement that
the defendant "at least make some plausible showing of how [the witnesses'] testimony would have been
both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867
(1982). If a defendant has not had an opportunity to interview a witness, he may make the necessary
showing by establishing the matters to which the witness might testify and the relevance and importance of
those matters to a successful defense. Coleman v. State, 966 S.W.2d 525, 528 (Tex. Crim. App. 1998).

 Thus, because Guzman never had the opportunity to interview the witnesses, he should be allowed
some latitude when describing the testimony the deported workers would have given. In this case, however,
he did not meet his burden of showing that the testimony would have been material and favorable to his
defense. At the new trial hearing, Guzman did not testify. The only testimony came from his trial counsel
who testified on cross-examination: 


 Q: But you don't know what information these people had, if any?


 A: Yeah. Well, that's what discovery is.


 Q: Right. And you don't even know if - You don't know if they had any
kind of exculpatory evidence, do you?


 A: No.


 Q: So they could have known nothing?


 A. Well, exactly. But we'll never know that.


 Q: They could have seen nothing, correct?


 A: Could have.


On redirect examination, Guzman's trial counsel testified:

 Q: Is it possible that these witnesses did see something?


 A: I would say yes because they lived there at that camp. There was nothing
else but them and these other people.


 Q: As far as you know from your interaction with the defendant, what
contact did he have with these people that were deported?


 A: He worked with them. They lived with them. They ate with them. You
know they were there. They were the only people there. It was like a little
village.


This testimony from Guzman's trial counsel amounts to nothing more than speculation that the deported
workers may or may not have been able to offer favorable and material testimony. At most, counsel's
testimony shows a possibility that the deported workers could have testified in a material and favorable
manner. Without more, Guzman has failed to meet his burden. We overrule his first issue. 

Extraneous Offenses


 Guzman argues that the trial court erred in admitting evidence of extraneous offenses. He cites
Texas Rules of Evidence 404(b) and 403 and the Fifth, Sixth and Fourteenth Amendments to the U.S.
Constitution as well as the Texas Constitution and article 1.03(5) of the Texas Code of Criminal Procedure.
At the trial court, however, the only objections Guzman made related to the admissibility of extraneous
offenses; thus, any other grounds were waived. See Tex. R. App. P. 33.1. 

 Specifically, Guzman points to the following testimony:

 1. when Guzman was arrested, he was arrested for kidnaping, aggravated
assault and injury to a child;

 2. he hit Gonzalez' little girl;

 3. he regularly crossed people into the United States via the Rio Grande
River;


 4. Gonzalez believed Guzman was dangerous and capable of anything;

 5. he told Gonzalez he was going to kill her and sell the children;

 6. he had threatened to kill the children;

 7. he had raped a fourteen-year old niece;

 8. he had prostituted Gonzalez; and

 9. he had tried to kill Gonzalez in Atlanta.

 Because trial courts are in the best position to make decisions on admissibility, an appellate court
must review the admission of evidence under an abuse of discretion standard. Powell v. State, 63 S.W.3d
435, 438 (Tex. Crim. App. 2001). An objection to the admission of evidence must be timely and state the
specific grounds of the objection. Tex. R. Evid. 103(a)(1). Also, if a defendant objects to the admissibility
of evidence but the same evidence is subsequently introduced from another source without objection, the
defendant waives his or her earlier objection. Leday v. State, 983 S.W.2d 713, 717-18 (Tex. Crim. App.
1998); Massey v. State, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996). 

 Guzman did not object to testimony that he had crossed people at the border, that Gonzalez
believed he was dangerous and capable of anything, that he had threatened to kill Gonzalez and sell her
children, that he had threatened to kill her children, that he had raped a niece, or that he had prostituted
Gonzalez. Therefore, those objections were waived. Guzman did object, albeit untimely, to one witness's
testimony that Guzman had beat Gonzalez' daughter; the same evidence, however, was heard elsewhere
without objection. Guzman also objected when a sheriff's deputy testified that Guzman had been arrested
not only for the kidnaping and aggravated assault, but also for injury to a child. Again, other evidence that
he had hit Gonzalez' daughter was heard elsewhere without objection. Under these circumstances,
Guzman's objections to extraneous offense evidence are waived. We overrule Guzman's second issue.


JURY INSTRUCTION ON EXTRANEOUS OFFENSES


 Guzman argues that he was entitled to a jury instruction at the punishment phase on whether the
State had proven beyond a reasonable doubt that he had committed the extraneous acts that were heard
by the jury. Guzman is correct; however, the error was harmless.

 In the punishment phase, the State may offer evidence of extraneous acts against a defendant if the
State proves beyond a reasonable doubt that the defendant committed those acts. See Tex Code Crim.
Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2003). At the punishment phase, the defendant is entitled
to an instruction that the jury is only to consider the extraneous act if the State presents proof beyond a
reasonable doubt. Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). The instruction is
required even if the evidence of extraneous acts was introduced during the guilt-innocence phase of the trial.
Allen v. State, 47 S.W.3d 47, 50 (Tex. App.--Fort Worth 2001, pet. ref'd). 

 In this case, the State introduced evidence of extraneous acts, but the punishment phase charge did
not include an instruction that those acts must be proven beyond a reasonable doubt before the jury could
consider them. This was error. The State agrees, but argues that the error was harmless.

 Because Guzman did not object to the omission of the instruction, we will reverse only if the error
is egregious and created such harm that Guzman did not receive a fair and impartial trial. See Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In determining whether a defendant
suffered egregious harm, we consider the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and other relevant information
revealed by the record of the trial as a whole. Id. 

 Although Guzman set forth the proper harm analysis standard in his brief, he totally failed to brief
how he was harmed by the failure of the trial court to give the extraneous offense instruction. Therefore,
Guzman has waived this issue. Tex. R. App. P. 38.1(h).

 Moreover, even if Guzman had not waived this issue, the error was harmless. On the aggravated
assault charge, the range of punishment was two to twenty years imprisonment and a fine up to $10,000.
The jury assessed only thirteen years with no fine. On the kidnaping charge, the range of punishment was
two to ten years imprisonment and a fine up to $10,000. The jury assessed only five years with no fine.
Further, the evidence of extraneous acts was uncontroverted, and the prosecutor did not refer to them or
emphasize them in any way in her arguments to the jury. We overrule Guzman's third issue. 

Ineffective Assistance of Counsel


 Because the test for ineffective assistance of counsel is the same under the state and federal
constitutions, both inquiries are subsumed into one. Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.
Crim. App. 1986). We measure a claim of ineffective assistance of counsel against the two-prong test
established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). See
Hernandez, 726 S.W.2d at 55-57. The appellant must first show that his attorney's performance was
deficient, i.e., that his assistance fell below an objective standard of reasonableness. Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Second, assuming the appellant has demonstrated deficient
assistance, it is necessary to affirmatively prove prejudice. Id.

 The assessment of whether a defendant received effective assistance of counsel must be made
according to the facts of each case. Id. at 813. Any allegation of ineffectiveness must be firmly founded in
the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Id. Under normal
circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was
so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that
counsel's conduct was reasonable and professional. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation. Id. In the majority of cases, the record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial counsel. Id.

 Here, Guzman argues that he was denied effective assistance of counsel. Specifically, he complains
of (1) his counsel's failure to ask for a dismissal because of the deportation of witnesses; (2) her failure to
object to and elicitation of testimony concerning Guzman's extraneous offenses and bad acts; and (3) her
failure to request a reasonable doubt standard for extraneous offenses in the jury charge. The instant case
presents an example of the inadequacies inherent in evaluating ineffective assistance claims on direct appeal.
Guzman's motion for new trial did not raise these issues. Therefore, his complaints directed at his trial
counsel involve actions that may or may not be grounded in sound trial strategy. The record does not reflect
his attorney's reasons for doing or failing to do the things of which appellant complains. In such situations,
the issues are better presented within the framework of a post-conviction writ of habeas corpus under
article 11.07 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon Supp.
2003); Ex parte Torres, 943 S.W.2d 469, 475-76 (Tex. Crim. App. 1997); see also Thompson, 9
S.W.3d at 813 ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of
counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its
determination on direct appeal with a record capable of providing a fair evaluation of the merits of the
claim . . . ."). We overrule this issue.

Conclusion


 Having found that all of Guzman's issues on appeal lack merit, we affirm the trial court's judgment.


 Karen Angelini, Justice


Do not publish