**Opinion filed January 24, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00045-CR

_____

## KINDRELL MONIQUE SANDERS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR35446**

## M E M O R A N D U M   O P I N I O N

The jury convicted Kindrell Monique Sanders of the offense of arson and assessed her punishment at confinement for fourteen years and a fine of $3,000. The trial court sentenced Sanders accordingly and ordered her to make restitution in the amount of $160,000. We affirm.

In this appeal, Sanders first argues that the trial court erred when it admitted evidence of extraneous offenses. In the same point of error, Sanders claims that the trial court erred when it failed to properly instruct the jury during both phases of the trial on the burden of proof related to such evidence.

Dwain Rotan owned a four-unit apartment complex located at 201 Edgewood in Midland. At the time of the fire, all four units were rented. Janice Robinson and her son lived in a downstairs unit, and seven members of the Whitfield family occupied the other downstairs unit. Naomi Delarosa Sanchez and her son lived in one of the upstairs units, and Joseph Grace occupied the other. Appellant had been in a relationship with Grace; Grace was also known as "Po Pimp."

Somewhere around 3:00 a.m. on December 10, 2006, the entire apartment complex was completely destroyed by fire. Alan Kilgore worked in the Fire Marshal's office for the City of Midland. During a subsequent investigation as to the cause of the fire, Kilgore determined that the fire originated on the front porch of Grace's apartment and "quickly burned from the front door, front window area up into the attic, and it spread through the rest of the building from there." The building was completely destroyed, as were some of the vehicles that were parked nearby. Kilgore noticed that all four tires on Grace's vehicle had been slashed, the windows had been broken, and there were several wooden matches on and around the car. Kilgore concluded that the person who started the fire had used some type of flammable or combustible liquid.

After talking to witnesses, the investigators seized and impounded Appellant's car. In their subsequent search of the car, the investigators found a can of charcoal lighter, a box of wooden matches, several lighters, and a tire iron. They searched Appellant's home but did not find a grill or anything else that

2

required the use of lighter fluid. In Kilgore's opinion, the matches from the car and those found at the scene appeared "to be identical."

Latoya Whitfield testified that, two weeks before the fire, she saw Appellant go upstairs to Grace's apartment, and she heard the sound of breaking glass. She did not see Appellant throw anything, but she heard the glass break and knew that no one else was in the apartment. She also saw Appellant leave the apartment. Latoya testified that Appellant broke the window to Grace's apartment on a second occasion as well. The landlord repaired the window the first time but required that Grace repair it the second time. Robinson, the other downstairs tenant, testified that, on one occasion as she was standing in the doorway to her unit, she saw a woman park her car, remove a tire tool from the trunk of her car, and go up the stairs. Robinson then heard the sound of breaking glass coming from Grace's apartment and, after that, saw the woman running back to her car. Robinson testified that the tire tool that had been seized from Appellant's car was similar to the one she saw the female carrying.

About six weeks before the apartment fire, someone set fire to Grace's car. Kimberly Whitfield, a downstairs tenant, testified that Appellant admitted that she had set Grace's car on fire and that Appellant laughed about it. Pictures of that car were admitted at trial. Kimberly also testified that, on yet another occasion, Appellant sprayed pepper spray into Grace's eyes during an argument.

On the night that the arson occurred, Kimberly saw Grace with another woman. In fact, Appellant had called her friend, Dominica Glover, from outside a local nightclub called "Kings" and told Glover that Grace "was with another girl or did something at Kings." Appellant told Glover that "she was fighting this demon not to go off on him" and that "[h]e going to make me take a trip to 201 Edgewood." After Appellant said that "[e]verybody better evacuate the building," Glover, because she knew the Whitfield family, tried to call and warn them.

3

Meanwhile, Arthur Ray Hubbard and his grandmother were preparing to deliver newspapers early that morning, and they saw Appellant at a nearby gas station. Hubbard saw Appellant put gas into a glass bottle. Hubbard noticed that Appellant was driving a maroon car, and he later saw the same car about a block from the apartment building around the time of the fire. Hubbard's grandmother told the jury that she saw the maroon car "speeding away" from the apartment complex. Hubbard also testified that he knew Grace and that he previously had seen Appellant attack Joseph with a tire iron.

One of Appellant's complaints about the admission into evidence of the extraneous offenses is that those acts did not "relate to other acts by the accused against the complainant." Appellant concedes that "there was some connection between Joseph Grace and the [apartments] where the fire occurred." But she argues that, because Grace "is neither the victim nor the complainant identified in the indictment," the trial court erred "in allowing evidence of extraneous offenses allegedly committed by appellant against a third party in this case." Specifically, Appellant complains about allowing witnesses to testify that she had set fire to Grace's car, that she had used a tire iron to break the windows in Grace's apartment, and that she had used pepper spray during an argument with Grace. The State counters that the connection must be one in which the offense committed is connected with the extraneous conduct.

Whether evidence of an extraneous act is relevant apart from character conformity is a question for the trial court. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We review a trial court's ruling on the admissibility of an extraneous offense for an abuse of discretion. *Id.* There has not been an abuse of discretion as long as the trial court's ruling is within the zone of reasonable disagreement. *Id.* "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is

4

probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988); *see* TEX. R. EVID. 404(b). If so, "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Id.* at 685.

Evidence of prior bad acts is admissible "if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005); *see also Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991). Rule 404(b) prohibits a trial court from admitting evidence of an extraneous offense to prove that the defendant acted in conformity with the character that he demonstrated when committing the previous bad act. *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997); *see* TEX. R. EVID. 404(b). It must be "relevant to a fact of consequence apart from its tendency to show conduct in conformity with character." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

Appellant's first contention is that evidence of the extraneous offenses should not have been admitted to show her motive because the extraneous offenses were not directed toward the victim identified in the indictment. Appellant correctly asserts that, to be admissible to prove motive, extraneous offense evidence generally must relate or pertain to other acts by the accused against the victim of the charged offense. *See Foy v. State*, 593 S.W.2d 707, 709 (Tex. Crim. App. [Panel Op.] 1980). However, Appellant cites to no authority in support of her contention that the extraneous offense must have been committed against the complainant that was actually named in the indictment. Rotan, the owner of the apartment complex in which Grace lived, was named in the indictment as the complainant. There can be no question, however, that Grace was also a victim of the indicted offense even though he was not named in the indictment.

5

At trial, Appellant argued that she did not start the fire and that the investigators were not able to rule out an accident as the cause of the fire. In order to show that Appellant had a motive and to indicate the lack of accident, evidence of Appellant's volatile relationship with Grace and evidence that she had set fire to his car on a previous occasion is relevant apart from showing conformity with character. In this case, it does not matter that Grace was not named as the victim or the complainant in the indictment. Additionally, without eyewitnesses, a confession, or other direct evidence, the State's need for the extraneous offense evidence "raise[s] an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense." *See Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972).

Appellant's second contention is that the trial court erred when it allowed Robinson to testify that an unidentified female used a tire tool to break the windows in Grace's apartment because Robinson's testimony "failed to even show that an offense was committed, let alone that appellant was the perpetrator of this extraneous offense." In addition to Robinson's testimony, Latoya Whitfield identified Appellant as the person who had broken the windows in Grace's apartment on two separate occasions. Additionally, Hubbard testified that, on another occasion, he saw Appellant try to hit Grace with a tire iron. We conclude that this evidence is sufficient to support a finding that Appellant was the unidentified female that Robinson observed breaking the window. *See Huddleston*, 485 U.S. at 685. We hold that the trial court did not abuse its discretion when it admitted evidence of the extraneous offenses.

Next, Appellant claims that the trial court erred when it failed to "give a limiting instruction on extraneous offenses" during the "guilt-innocence" phase of the trial. Appellant contends that the trial court should have admonished the jurors to "limit their consideration of [extraneous offense] evidence to determining the

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant in connection with the offense alleged against her in the indictment and for no other purpose."

The State argues that Appellant "received the relief of which she claims error" because there was such an instruction in the charge. The court's charge during the guilt/innocence phase of the trial included the following instruction:

> With regard to any evidence of conduct or acts of Defendant other than the accusation in the indictment, you are instructed that you cannot consider such other evidence unless you first believe beyond a reasonable doubt that she actually engaged in such other conduct, and if you do so believe then your consideration of such other evidence is limited to the issue of motive and for no other reason.

Because the jury charge that the trial court submitted to the jury during the guilt/innocence phase of the trial contains the very instruction that Appellant complains was missing, we find no error in that regard.

Appellant also argues that such an instruction should have been included in the charge during the punishment phase of the trial. The State argues that, because such an instruction was given during the guilt/innocence phase and because the State "did not put on any evidence during the punishment phase of trial," it was not error to exclude such an instruction from the charge on punishment. The State further argues that, even if it was error not to include the instruction, "the failure to give such an instruction did not cause the appellant egregious harm" because "[t]here was substantial evidence of her guilt" in light of the evidence that Appellant knew that Grace was with another woman earlier that evening, that she was going "over to the apartment because a demon encouraged her," and that eyewitnesses saw her filling a glass container with gasoline and saw her near the scene later that evening.

7

If evidence of extraneous acts is admitted at trial, "regardless of whether such evidence was introduced at the guilt-innocence or punishment phase, article 37.07, section 3(a) requires that the jurors be instructed not to consider such [evidence] in assessing the defendant's punishment unless they find the defendant culpable for such offenses or acts under the statutorily prescribed reasonable-doubt standard." *Allen v. State*, 47 S.W.3d 47, 50 (Tex. App.—Fort Worth 2001, pet. ref'd). Although the State offered evidence of the extraneous offenses only during the guilt/innocence phase to prove motive, the jury must have been satisfied beyond a reasonable doubt that such offenses were attributable to Appellant before it could consider the extraneous offense evidence to assess punishment. *See id.* No such instruction was given during the punishment phase of this trial. However, because Appellant did not object to the missing instruction, we apply the *Almanza* standard to assess harm. *See Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). When a defendant fails to object to jury charge error, we examine the entire record to determine whether the error was so egregious and created such harm that the defendant did not receive a fair and impartial trial. *Id.* Under these circumstances, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 171. The harm must be actual and not merely theoretical. *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999).

Appellant does not argue that the evidence of her extraneous misconduct was insufficient to support a conviction, lacking in credibility, or materially impeached. Nor did Appellant provide authority, evidence, reasoning, or other considerations indicating that, if an instruction had been given, the jury would likely have disregarded the extraneous offense evidence or imposed a lighter

sentence. Appellant faced up to ninety-nine years' imprisonment and up to a $10,000 fine, *see* TEX. PENAL CODE ANN. §§ 12.32, 28.02(d)(2) (West 2011), but the jury assessed a fourteen-year sentence and a $3,000 fine. Appellant has failed to demonstrate that she suffered egregious harm as a result of the trial court's failure to instruct the jury during the punishment phase that the State must prove extraneous offenses beyond a reasonable doubt. Appellant's sole point of error is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

January 24, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

9