Opinion filed February 21, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00051-CR

_____

**AMBER MARIE NEUSER, Appellants**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR38324**

## M E M O R A N D U M   O P I N I O N

The jury convicted Amber Marie Neuser of the offense of aggravated assault causing serious bodily injury, found that she used a deadly weapon, and assessed her punishment at confinement for eight years and a $10,000 fine. The trial court ordered restitution in the amount of $1,500. We affirm.

On appeal, Appellant challenges the sufficiency of the evidence, claims that the trial court erred in instructing the jury, and alleges that the prosecutor made an improper jury argument.

A group of friends, Leyla Cumur, Jennafer Ann Foster, Norah Ashlee Pallanez, Cody Glen Reynolds, and Tyler Allen, were drinking and singing karaoke at Woofers & Tweeters, a bar in Midland. When they sang a Spice Girls' song, Foster noticed that Appellant and her friends appeared to "have a problem" with either the ladies or their song selection. At the end of the night, the DJ announced that he was playing the final song of the night, and Cumur approached the DJ to ask if he would play one more song. Appellant yelled at Cumur to "get the 'F' off of the stage, you F'ing bitch." Appellant yelled at them to "[s]it the f--k down" and "[s]hut the f--k up" and called the women "white trash bitches." When Cumur and Foster approached Appellant's table, an argument ensued. When Pallanez saw that they were having an argument, she went to get her friends and leave. Appellant and her friend, Adriena Perkins, were yelling profanities and calling the women "skinny bitches." Appellant punched Foster, and when Pallanez grabbed Foster's belt loops to pull her away, Perkins hit Pallanez from the side. Pallanez tried to say that she did not want to fight, but Perkins continued to call her names, pull her hair, and hit her. Eventually, the bouncer threatened to break Perkins's wrist if she did not let go of Pallanez's hair. Appellant had Foster pinned down on the dance floor and was hitting her with her fists.

The bouncers pushed all of the women outside and told them that they had called the police. Allen gathered purses and shoes from inside, and Reynolds persuaded Cumur, Foster, and Pallanez to leave while the men spoke to police. As the three ladies tried to leave, Appellant and Perkins pounded on the hood and windows of their vehicle and tried to continue the fight. After they drove away,

2

the three ladies called Allen and Reynolds and told them to meet at Whataburger. Allen and Reynolds spoke to the police about the fight at Woofers & Tweeters.

At a nearby Whataburger, the three ladies went inside to wait on the men. When Foster returned to the car to get her phone, she saw Appellant and Perkins swerve, with the tires screeching, into the parking lot. The door to the trunk was open and bobbing up and down before the car came to a stop. Appellant and Perkins immediately went to the rear of the car, and Perkins began searching for something in the trunk. As Foster ran inside, Appellant yelled, "Why are you running? Are you scared? I'm going to f--k you up." Pallanez told the manager of the Whataburger that there had been a fight earlier, that the women they fought with had just arrived, and that it looked like they were searching for a weapon. Pallanez asked the manager to call the police and to lock the doors.

The three women were trying to hide behind the counter when Appellant and Perkins burst through the doors. Appellant was yelling that they were going to "get" them, that they were going to "kill" them, and that the ladies had "f----d with the wrong people" and were "going to pay the price." A Whataburger employee, who had been outside smoking, followed them inside and began taking pictures. Perkins reached out and slashed Foster across the chest with a box cutter. Blood "went everywhere." Appellant then punched Cumur, grabbed her hair, and pushed her head onto the ground while Perkins cut her chest and under her arm. Two men, who were eating at nearby table, were able to separate Appellant and Perkins from the other women and push them outside the restaurant. As they were leaving, Appellant yelled, "That's what you f-----g get. That's what you get."

Officers arrived at the Whataburger and called for an ambulance. From surveillance cameras and statements of witnesses, Detective Geo Mitchell determined that Appellant was involved and tried to locate her, but without success. Appellant's brother contacted the Midland Police Department to find out

why they were looking for his sister, and the dispatcher connected him to Detective Mitchell. Detective Mitchell went to Appellant's brother's home, and from there, Detective Mitchell spoke to Appellant over the phone. Detective Mitchell described Appellant as "very defiant" and testified that "she wasn't very cooperative with any kind of questions that I had concerning where she had been or what had occurred." Appellant admitted to being at the scene and admitted that there was a disturbance, but she would not corroborate any facts related to the assault. Detective Mitchell said that, "at some point, it just got rhetorical, so I just -- literally, I just hung up the phone. We [were not] getting anywhere." From pictures and witness statements, Detective Mitchell knew that Appellant and "an unidentified African-American female" were at the scene. After talking to the victims and "seeing the wounds that they had," Detective Mitchell determined that both women were involved in the assault, and he obtained a warrant for Appellant's arrest.

The jury found Appellant not guilty of assault against Foster but found that Appellant was guilty "as charged in count II of the indictment." In Count II, the grand jury alleged that Appellant "intentionally, knowingly and recklessly cause[d] serious bodily injury to Leyla Cumur by cutting and stabbing the said Leyla Cumur with a box cutter and a knife and a razor blade and a sharp object unknown to the grand jury."

In her first issue on appeal, Appellant challenges the sufficiency of the evidence. Appellant admits that she "entered into a physical altercation at Woofer's and Tweeters, and again at Whataburger with . . . Cumur," but she argues that "the evidence is insufficient to establish that Appellant participated in some scheme or plan with Perkins to attack Cumur with the intent to cause serious bodily injury, or to cut Cumur with a box cutter."

4

When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012). We defer to the jury's credibility determinations. *Jackson*, 443 U.S. at 319; *Gross*, 380 S.W.3d at 185.

As charged in this case, the State was required to prove beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused serious bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.01 (West Supp. 2013), § 22.02(a)(1) (West 2011). A person may be guilty of an offense as a principal or as a party. *See id.* § 7.01(a). A person is criminally responsible for the conduct of another if, acting "with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

The evidence sufficiently supports a conviction under the law of parties when the accused is physically present during the offense and encourages the commission of the offense by words or agreement. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). When determining whether a defendant was a party to an offense, we consider the events that occurred before, during, and after the commission of the offense. *Id.* There must be sufficient evidence of an understanding and common design to commit the offense. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Party status may be proven through circumstantial evidence. *Id.*

Appellant recognizes that the evidence shows "that Appellant physically restrained Cumur" during the assault but argues that this "physical altercation is not sufficient to establish that Appellant was helping Perkins commit the offense of aggravated assault with a deadly weapon against Cumur." The State argues that

5

the "jury had the benefit of a DVD to view for themselves the assaults in the Whataburger" and argues that the evidence shows that Appellant encouraged Perkins during "every phase of this vicious assault."

Viewing the record in the light most favorable to the verdict, the evidence shows that Cumur, Foster, and Pallanez tried to flee from the fight at Woofers & Tweeters while Appellant was chasing their car and banging on the hood. A short time later, Appellant and Perkins swerved into the parking lot at Whataburger, and Perkins "popped" the trunk before she stopped the car. Appellant stood at the rear of the car yelling threats to Foster and waited as Perkins rifled through the trunk, apparently looking for a box cutter. After bursting through the doors, Appellant was yelling profanities and threats while Perkins was waiving a shiny object. Once Perkins slashed Foster's chest, there was "blood everywhere." It was then that Appellant punched Cumur and held her down by the hair. Perkins then came over to where Appellant was struggling with Cumur, and although Appellant moved out of the way, she continued holding Cumur's hair as Perkins straddled Cumur and made slashing motions. As two customers rushed to help and separated the group, Appellant was yelling, "That's what you get."

Based on the totality of the evidence, a rational jury could have found beyond a reasonable doubt that Appellant encouraged, directed, aided, or attempted to aid Perkins in the assault of Cumur. Even if Appellant did not know prior to the fight at Whataburger that Perkins would use a deadly weapon, she held down Cumur and allowed Perkins to stab her after watching Perkins slash Foster across the chest. *See Randolph v. State*, 656 S.W.2d 475, 477 (Tex. Crim. App. 1983) ("[T]he very least that is required is encouragement of the commission of the offense by words or by agreement made prior to or contemporaneous with the act."). As additional circumstantial evidence of guilt, when Detective Mitchell spoke to her, Appellant was "very defiant" and would not admit anything related to

the assault.  *See Guevara*, 152 S.W.3d at 50 ("Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt.").  After examining all of the evidence and the reasonable inferences drawn therefrom, we conclude that a rational jury could have found beyond a reasonable doubt that Appellant was guilty as a party to the offense of aggravated assault.  Appellant's first issue is overruled.

In her second issue, Appellant argues that the trial court erred when it failed to instruct the jury on the burden of proof for extraneous offenses during the punishment phase of the trial.  The State argues that the offense "had already been subjected to the beyond a reasonable doubt standard and no proof was required."

During the punishment phase, the parties may offer evidence of:

> [A]ny matter the court deems relevant to sentencing, including but not limited to the *prior criminal record* of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an *extraneous crime or bad act that is shown beyond a reasonable doubt* by evidence to have been committed by the defendant or for which he could be held criminal responsible.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2013) (emphasis added).  Regardless of whether extraneous offense evidence is introduced during the guilt or the punishment phase of the trial, the trial court must give an instruction on the burden of proof for such offenses. *Allen v. State*, 47 S.W.3d 47, 50 (Tex. App.—Fort Worth 2001, pet. ref'd).  But when the offense has been adjudicated, such an instruction is not necessary. *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).  The Court of Criminal Appeals has construed Section 3(a) of Article 37.07 and held that a defendant's prior criminal record "is not grouped with extraneous offenses, and therefore we presume that the legislature did not intend to require the same burden of proof that it attached to

7

extraneous, unadjudicated offenses." *Id.* The court reasoned that an adjudicated offense "is part of a defendant's criminal record, and Art. 37.0[7], § 3, does not require further proof of guilt beyond a reasonable doubt." *Id.*

The only extraneous offense evidence admitted at Appellant's trial was a "DEFERRED JUDGMENT AND ORDER OF PROBATION," which showed that the evidence substantiated a finding of guilt for the offense of possessing or using a substance containing a volatile chemical. The trial court deferred the adjudication of guilt and placed Appellant on probation. Under these circumstances, the burden of proof has been satisfied, and no further proof of guilt is required. *See Bluitt*, 137 S.W.3d at 54 (concluding that no further proof is required by Article 37.07, section 3 for prior offenses that resulted in a final conviction, probation, or deferred adjudication). In this situation, the lack of a jury instruction on the burden of proof for extraneous offenses is not error because "[g]iving such an instruction is a useless act if no unadjudicated offenses have been introduced." *See id.* In the absence of error, we do not reach a harm analysis. Appellant's second issue is overruled.

In her third issue, Appellant complains that the prosecutor engaged in improper jury argument by "asking the jury to 'do the math' when considering a sentence in this case, which is absolutely against the law." However, Appellant did not object to the prosecutor's argument at trial. When a defendant fails to object to jury argument, he forfeits his right to raise the issue on appeal. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Chapman v. State*, 349 S.W.3d 241, 247 (Tex. App.—Eastland 2011, pet. ref'd). When Appellant failed to object at trial, she waived this issue on appeal. TEX. R. APP. P. 33.1(a). Appellant's third issue is overruled.

8

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


February 21, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.