Opinion filed June 14, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed June 14, 2007

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00016-CR

                                                    __________

 

                            GUADALUPE M. RODRIGUEZ, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland County, Texas

 

                                                 Trial
Court Cause No. CR30822

 



 

                                                                   O
P I N I O N

The jury convicted Guadalupe M. Rodriguez of the
offense of indecency with a child by contact. 
See Tex. Penal Code Ann. ' 21.11 (Vernon 2003).  The jury assessed appellant=s punishment at twenty years
confinement and a fine of $10,000.  We
affirm.

                                                             The
Charged Offense








Section 21.11(a)(1) of the Penal Code provides
that a person commits the offense of indecency with a child by engaging in
sexual contact with a child.  Section
21.11(c)(1) defines Asexual
contact@ as any
touching, including touching through clothing, by a person of the anus, breast,
or any part of the genitals of a child with the intent to arouse or gratify the
sexual desire of any person.  In this
cause, the indictment alleged that, on or about May 1, 2005, appellant engaged
in sexual contact with S.J., a child younger than seventeen years of age and
not appellant=s spouse,
by touching a part of her genitals and breasts with the intent to arouse and
gratify appellant=s sexual
desire.  S.J. was eleven years old at the
time of the conduct charged in the indictment.

                                                                 Issues
on Appeal

Appellant presents three points of error for
review.  In his first point, appellant
contends that the trial court erred in overruling his motion for new trial that
challenged the sufficiency of the evidence to support his conviction.  In his second point, appellant asserts that
the trial court erred during the punishment phase by admitting evidence that
appellant had previously committed acts of indecency with minors.  In his third point, appellant contends that
the trial court erred in failing to include a reasonable-doubt instruction for
unadjudicated extraneous offenses or bad acts during the punishment phase.    

                                                        Sufficiency
of the Evidence

Appellant does not challenge the legal sufficiency
of the evidence.  To determine if the
evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State,
23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the
reviewing court determines whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence.  Watson, 204 S.W.3d at
414-15; Johnson, 23 S.W.3d at 10-11. 
The jury, as the trier of fact, is the sole judge of the credibility of
the witnesses and of the weight to be given to their testimony.  Tex.
Code Crim. Proc. Ann. art 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  The jury may accept one version of the facts
and reject another.  Penagraph v.
State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).








The evidence established that S.J. was spending
the night at Hollie Lynn Anderson=s
house on the date of the alleged incident. 
S.J. was eleven years old at that time. 
Anderson
was S.J.=s older
cousin.  Appellant was Anderson=s
former boyfriend.  Appellant and Anderson broke up about a
week before the alleged incident.  Until
they broke up, appellant lived with Anderson
at her house.  Appellant and Anderson
both testified that, during the week following the breakup, appellant visited
Anderson at her house and that they engaged in sexual relations with each
other.  S.J., Anderson,
and appellant all testified that they were at Anderson=s
house on the date of the alleged incident.

            S.J. testified that she did not bring any nightclothes to
sleep in at Anderson=s house.  S.J. borrowed a nightgown and a robe from Anderson.  S.J. said that, after she changed into the
nightgown and the robe, she sat on Anderson=s couch with appellant.  At the same time, Anderson was in her bedroom.  S.J. and appellant were looking through a
dictionary.  S.J. testified that
appellant was sitting right beside her on her right side and that he had his
arm around her shoulders. She also testified that appellant started moving his
hand toward her breasts and then put his hand up above her breast.  S.J. said that appellant moved his hand from
her robe to her nightgown and then under her nightgown.  S.J. also said that appellant had his hand on
her and that she was shocked.  She
further testified that appellant started going down to her below area with his
other hand.  She said that appellant put
his hand inside her underwear and touched her private part with his hand.   S.J. was shocked and frightened.  She testified that she had no doubt appellant
touched her on her breasts and private area.            

S.J. testified that Anderson came out of her bedroom and asked
whether appellant had turned off the bedroom fan.  S.J. said that, when Anderson opened the bedroom door, appellant
quickly pulled his hand away from her. 
She also said that she went into the bathroom, hid in the bathtub behind
the shower curtain, curled up, and started to cry.  S.J. testified she told Anderson that appellant had touched her and
where he had touched her.     








              Anderson
testified that the incident occurred after 10:00 p.m.  She said that S.J. borrowed a gown from her
and that S.J. was wearing underwear.  Anderson was washing
dishes in the kitchen, and appellant and S.J. were sitting close to each other
on the couch.   Anderson said that appellant and S.J. were
reading a dictionary.  Anderson testified that, after she finished
the dishes, she went into her bedroom to change clothes.  She said that her bedroom door got stuck when
she closed it and that she yanked the door to open it before she changed
clothes.  When she opened the door, she
saw what looked like appellant=s
hand coming out of the top of S.J.=s
gown.  Anderson was shocked and knew that “something
was bad [with S.J.].”  Anderson testified that S.J. ran into the
bathroom, shut the door, and started crying. 
Anderson
told appellant that he needed to leave. 
She said that appellant went outside to the front porch and that she
locked the door.  Anderson then went into the bathroom and
found S.J. in a fetal position in the bathtub. 
S.J. told Anderson
that appellant had touched her.  Anderson testified that
she approached appellant, told him to leave, and told him that she was going to
call the police. 

Anderson
further testified that she and S.J. went to a friend=s
house.  Anderson and S.J. were both
crying and scared because they were afraid of appellant.  The friend told them to go to the
police.  According to Anderson, S.J. told her that appellant had
touched her boob and that he had touched her in her panties.  Anderson
testified that she was totally disoriented, drove right past the police
station, and ended up at a Church=s
Chicken.  Anderson said that Midland Police Detective
Nancy Hollingsworth arrived at the Church=s
Chicken.

            During cross-examination, Anderson testified that she had been angry
with appellant when they were breaking up and that she might have told
appellant that she was going to ruin his reputation.  Anderson
said that appellant showed up at her house at about 6:00 p.m. on the day of the
incident.  She testified that she did not
remember appellant telling her that he had hurt his hand at work that day or
anything about appellant having a swollen or sore hand.  Anderson
also said that she did not ask appellant whether he was going to spend the
night.  Anderson admitted that she and appellant
smoked a marihuana joint that evening.








Appellant testified that he broke up with Anderson on April 22,
2005.  He said that Anderson became violent and threatened to ruin
his reputation among all of his friends. 
Appellant testified that Anderson
wanted him to install a door and a screen door at her house on the date of the
alleged incident but that he injured his right hand at work on that date.  He said that he called Anderson and told her that he had hurt his
hand.  According to appellant, Anderson asked him to
come over and show her his hand.  He also
said that Anderson
started crying and yelling that she wanted to see him. Appellant testified that
he went to Anderson=s house and sat down in the
backyard.  Appellant said that he arrived
at Anderson=s house at about 6:15 p.m. or 6:30
p.m.  He said that he and Anderson smoked
a joint together.  Appellant testified
that Anderson
asked him whether he was going to spend the night and that he told her he was
never going to spend the night with her again. 
Appellant testified that he worked on installing the doors.  Appellant testified that S.J. was present at Anderson=s house and that he had seen S.J. on
two prior occasions.

Appellant also testified that, after working on
the doors, he sat by S.J. on a love seat. 
Appellant said that S.J. was sitting to his left and that they were
reading in a dictionary.  He said that Anderson was sitting on
the couch and then got up to make him some coffee.  Appellant said that he motioned to Anderson to make another
joint and that she went into the bedroom and closed the door so that she could
roll a joint.  Appellant testified that Anderson opened the door
and yelled at him while asking why he had turned off the air conditioner.  Appellant said that he got up and turned the
air conditioner back on.  He said that S.J.
got up and casually walked to the bathroom and that Anderson told him he needed to leave.  Appellant testified that, before he left, Anderson told him S.J.
had stated that he had touched her. 
Appellant said that he called Anderson
stupid, walked off, and went straight home.

Appellant further testified that he did not touch
S.J. and that the alleged incident did not take place.  Appellant said that he could not have touched
S.J. with his right hand because of the injury to his right hand.  He said that he did not use his right hand
when he worked on the doors.  Rather,
appellant said that he used his left hand and right forearm to work on
them.  Appellant further testified that Anderson had previously
threatened his son with a similar allegation. 
According to appellant, Anderson
told his son not to be touching S.J.

Detective Hollingsworth investigated the
incident.  She testified that she met
Anderson and S.J. at Church=s
Chicken.  She determined that Anderson and S.J were
cousins.  Anderson and S.J. followed her
to the police department.  Detective
Hollingsworth said that she obtained details about what had happened from Anderson and that an interviewer with the Child Advocacy
 Center interviewed
S.J.  Detective Hollingsworth testified
that she continued the investigation and then obtained an arrest warrant for
appellant.  She said that officers later
arrested appellant.








Applying the above standard of review, the
evidence was factually sufficient to support appellant=s
conviction for indecency with a child. 
S.J. testified that appellant touched her breasts with his hand and that
appellant put his hand inside her underwear and touched her private part.  The testimony of a child victim alone is
sufficient to support a conviction for indecency with a child.  Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); Emenhiser v. State,
196 S.W.3d 915, 930-31 (Tex. App.CFort
Worth 2006, pet. ref=d);
Perez v. State, 113 S.W.3d 819, 838 (Tex. App.CAustin
2003, pet. ref=d).  Additionally, Anderson, the outcry witness,
testified that S.J. told her appellant had touched her boob and that he had
touched her in her panties.  Appellant
contends that “Anderson=s
testimony simply does not add up” and that Anderson made up the allegations as a way to
pay him back for ending their relationship. 
He also contends that S.J.=s
testimony tracked Anderson=s testimony “in areas that suggest
fabrication.”  However, the jury, as the
sole judge of the credibility of the witnesses and of the weight to be given to
their testimony, was entitled to accept S.J.=s
and Anderson=s testimony and to reject appellant=s testimony.  Articles 36.13, 38.04; Penagraph, 623
S.W.2d at 343.  We overrule appellant=s first point of error.            

                     Extraneous Offense Evidence During Punishment
Phase

In his second point, appellant argues that the
trial court erred in admitting evidence of prior extraneous acts of indecency
with minors.  Specifically, appellant
contends that the trial court erred in allowing A.R.A., A.A., and E.R. to
testify.

A.R.A. testified that she was twenty-four years
old and that appellant was her uncle. 
She said that, at some point when she was between the ages of seven and
eleven and probably around nine or ten years old, she was spending the night at
her grandmother=s
house.  She also said that appellant got
into bed with her, put his hand up her shirt, and touched her breasts.  A.R.A. testified that she was not wearing a
bra at the time.  She said that appellant
told her it was okay because he was her uncle.

A.A. testified that she was twenty-three years old
and that appellant was her uncle.  She
testified about an incident that occurred when she was eleven years old.  She said that she and appellant were sitting
on a couch at her grandmother=s
house.  She also said that appellant had
his arm around her shoulders.  A.A.
testified that appellant touched her on her breast over her clothing.  She also testified that appellant put his hand
up her shirt until his hand was up to the bra line where the cup begins.  She said that, at that point, her grandmother
called appellant and “that=s
when it ended.”

E.R. testified that she was twenty-three years old
and that appellant was her cousin.  She
said that, when she was eight or nine years old, appellant touched her under
her shirt and had sex with her.  She said
that appellant had sex with her numerous times until she was sixteen or
seventeen years old.  E.R. said that she
became pregnant as a result of her sexual relations with appellant.  She also said that the baby was stillborn.








On cross-examination, E.R. testified that she and
Anderson were friends.  E.R. said that,
before Anderson
started dating appellant, she told Anderson that appellant was not a good
person and that he had raped her. 
Appellant called Anderson
as a witness during the punishment phase. 
Anderson
testified that E.R. did not approve of her dating appellant and that E.R. told
her that appellant was a bad person. 
However, Anderson
also testified that E.R. did not tell her about being raped by appellant.    

Appellant argues that the above extraneous
offenses or bad acts evidence was inadmissible for the following reasons:  (1) the evidence was not relevant under Tex. R. Evid. 401; (2) even if the
evidence was relevant, the unfair prejudice of the evidence substantially
outweighed its probative value under Tex.
R. Evid. 403; and (3) the State=s
notice of intent to offer the evidence failed to provide adequate notice of the
dates of the alleged incidents.  We
review a trial court=s
decision to admit extraneous offense evidence during the punishment phase of a
trial under an abuse of discretion standard. 
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).

Tex. Code
Crim. Proc. Ann. art. 37.07, '
3(a)(1) (Vernon 2006) provides in relevant part that, during the punishment
phase, the State may offer evidence:

[A]s
to any matter the court deems relevant to sentencing, including but not limited
to the prior criminal record of the defendant, his general reputation, his
character, an opinion regarding his character, the circumstances of the offense
for which he is being tried, and, notwithstanding Rules 404 and 405, Texas
Rules of Evidence, any other evidence of an extraneous crime or bad act that is
shown beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the crime
or act.

 

The admissibility of evidence at the punishment phase of a
noncapital felony offense is a function of policy rather than relevancy.  See Rogers
v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999); Miller-El v. State,
782 S.W.2d 892, 895 (Tex. Crim. App. 1990). 
Accordingly, the Texas Court of Criminal Appeals has observed that, in
assessing what is relevant to sentencing, the important question is Awhat is helpful to the jury in
determining the appropriate sentence for a particular defendant in a particular
case.@  Rogers,
991 S.W.2d at 265.








The language of Article 37.07, section 3(a)(1)
establishes that the conduct described by A.R.A., A.A., and E.R. was relevant
to the assessment of appellant=s
punishment.  Punishment phase evidence
that the trial court deems relevant is still subject to a Rule 403
analysis.  See Rogers, 991 S.W.2d at 266-67.  Under Rule 403, even relevant evidence may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of issues, misleading the jury, considerations of
undue delay, or needless presentation of cumulative evidence.  Relevant evidence is only inadmissible under
Rule 403 to the extent its degree of unfair prejudice substantially outweighs
the probative value of the evidence.  Rogers, 991 S.W.2d
at 266.  “Unfair prejudice” refers to “an
undue tendency to suggest [a] decision on an improper basis.”  Id.  A.R.A., A.A., and E.R. described conduct
on the part of appellant that was similar to appellant=s
conduct in this cause.  A.R.A. and A.A.
testified that appellant touched their breasts when they were children.  E.R. testified that appellant had sex with
her when she was a child.  Thus, the
extraneous offenses or bad acts involved indecency with children and sexual
assault of a child.  Given the similarity
of conduct involved in the charged offense in this cause and in the extraneous
offenses or bad acts, we find that the trial court did not abuse its discretion
in concluding that the probative value of the evidence was not substantially
outweighed by the danger of unfair prejudice. 
See Fowler v. State, 126 S.W.3d 307, 310-11 (Tex. App.CBeaumont
2004, no pet.) (holding that the trial court did not abuse its discretion in
admitting evidence of extraneous offenses of sexual assault of a minor during
the punishment phase).       

Appellant also contends that the State=s notice provided inadequate notice of
the dates of the alleged incidents. Tex.
Code Crim. Proc. Ann. art. 37.07, '
3(g) (Vernon 2006) provides in relevant part:

On timely request of the defendant, notice of
intent to introduce evidence under this article shall be given in the same
manner required by Rule 404(b), Texas Rules of Evidence.  If the attorney representing the state
intends to introduce an extraneous crime or bad act that has not resulted in a
final conviction in a court of record or a probated or suspended sentence,
notice of that intent is reasonable only if the notice includes the date on
which and the county in which the alleged crime or bad act occurred and the
name of the alleged victim of the crime or bad act.

 

The purpose of Article 37.07, section 3(g) is to avoid unfair
surprise and trial by ambush.  Nance
v. State, 946 S.W.2d 490, 493 (Tex. App.CFort
Worth 1997, pet. ref=d).








In this cause, the State filed a notice and an
amended notice of its intent to offer evidence of extraneous crimes, acts, and
wrongs committed by appellant.  The State
identified the extraneous offenses or bad acts involving A.R.A., A.A., and E.R.
in the amended notice.  The amended
notice provided that the State intended to offer evidence:  (1) that appellant sexually assaulted E.R. in
Midland County, Texas,
on or about January 1, 1991; (2) that appellant sexually assaulted A.R.A. in Midland County, Texas, on
or about January 1, 1991; and (3) that appellant sexually assaulted A.A. in Midland County, Texas,
on about January 1, 1993.

A.R.A. was twenty-four years old at the time of
trial.  She would have been nine or ten
years old on January 1, 1991.  She
testified that the incident occurred when she was probably around nine or ten
years old.  A.A. was twenty-three years old
at the time of trial.  She would have
been ten or eleven years old on January 1, 1993.  She testified that the incident occurred when
she was eleven years old.  E.R. was
twenty-three years old at the time of trial. 
She would have been eight or nine years old on January 1, 1991.  She testified that the first incident
occurred when she was eight or nine years old. 
Thus, the evidence was consistent with the dates set forth in the State=s amended notice. 

When an extraneous offense involves a crime
against a child, the State is not required to provide the defendant with notice
of the exact date of the alleged offense. 
Nelson v. State, 126 S.W.3d 700, 704 (Tex. App.CAmarillo 2004, pet ref=d); Hohn v. State, 951 S.W.2d
535, 537 (Tex. App.CBeaumont
1997, no pet.).  Often, child victims are
unable to remember or establish the specific date of an offense.  Therefore, with respect to extraneous
offenses involving child victims, the requirement obligating the State to
provide notice of the date of the offense is relaxed.  Nelson, 126 S.W.3d at 704; Hohn,
951 S.W.2d at 537; Sledge v. State, 903 S.W.2d 105, 107 (Tex. App.CFort Worth 1995), aff=d, 953 S.W.2d 253 (Tex. Crim App.
1997).  

The extraneous offense or bad acts evidence in
this cause involved acts against children. The State=s
amended notice provided approximate dates of the offenses or acts.  The testimony at trial was consistent with
the approximate dates in the notice. 
Thus, the record does not demonstrate that appellant was unfairly surprised
by the testimony as to when he committed the offenses or acts.  We hold that the notice complied with the
date requirement set forth in Article 37.07, section 3(g) and provided
reasonable notice to appellant of the date of the alleged offenses or
acts.  Nelson, 126 S.W.3d at 704; Hohn,
951 S.W.2d at 537.[1]








In its original notice of extraneous matters, the
State notified appellant that it intended to offer evidence of a number of
prior convictions.  The State=s amended notice identified the
extraneous offenses or bad acts involving A.R.A., A.A., and E.R.   The amended notice did not refer to the
convictions set forth in the original notice.

Appellant asserts that the State=s amended notice superceded and
replaced the original notice and that, therefore, the trial court erred in
permitting the State to introduce evidence of the convictions identified in the
original notice.  Appellant contends that
an amended notice in a criminal proceeding should have the same effect that an
amended pleading has in a civil proceeding. 
In civil cases, an amended pleading supercedes and supplants earlier
pleadings.  Tex. R. Civ. P. 65; see also Lee v. Na, 198 S.W.3d
492, 494 (Tex. App.CDallas
2006, no pet.).  Rule 65 applies in civil
proceedings; there is no corresponding rule that applies in criminal
proceedings to notices under Article 37.07, section 3(g).  Therefore, the State=s
amended notice did not supercede the original notice.  The State complied with the notice
requirement in Article 37.07, section 3(g) by providing appellant notice of the
convictions in the original notice.  The
trial court did not abuse its discretion in admitting evidence of the prior
convictions.  We overrule appellant=s second point of error. 

                                 Reasonable-Doubt
Instruction During Punishment Phase 

In his third point of error, appellant contends
that, because the trial court admitted the extraneous offense or bad acts
testimony of A.R.A., A.A., and E.R. during the punishment phase, the trial
court erred in failing to include a reasonable-doubt instruction for the
unadjudicated extraneous offenses and bad acts. 
In the punishment phase, a jury may not consider evidence of extraneous
offenses or bad acts unless it is satisfied beyond a reasonable doubt that the
defendant committed the described offenses or acts.  Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000); Fields
v. State, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999).  When evidence of unadjudicated extraneous
offenses or bad acts is admitted during the punishment phase, the trial court
must sua sponte instruct the jury that it may not consider the evidence in
assessing punishment unless it finds the extraneous offenses or bad acts have
been proven beyond a reasonable doubt.  Huizar,
12 S.W.3d at 483-84; Walker v. State, 195 S.W.3d 250, 262 (Tex. App.CSan Antonio 2006, no pet.); Allen v.
State, 47 S.W.3d 47, 50 (Tex. App.CFort
Worth 2001, pet. ref=d).  Therefore, in this cause, the trial court
erred in failing to include the reasonable-doubt instruction.  Ellison v. State, 86 S.W.3d 226,
227-28 (Tex.
Crim. App. 2002); Huizar, 12 S.W.3d at 484.








However, because appellant did not object to the
omission of a reasonable-doubt instruction in the trial court=s charge, we reverse only if the error
caused appellant such egregious harm that he did not have a fair and impartial
trial.  Ellison, 86 S.W.3d at 228;
Huizar, 12 S.W.3d at 484; Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985); Allen, 47 S.W.3d at 50-51.  We assess the degree of harm in light of the
entire jury charge; the state of the evidence, including the contested issues
and weight of probative evidence; the argument of counsel; and the record as a
whole.  Mann v. State, 964 S.W.2d
639, 641 (Tex. Crim. App. 1998).

Appellant contends that the harm from the trial
court=s failure
to submit a reasonable-doubt instruction is apparent because, although he was
eligible to receive probation, the jury assessed the maximum punishment for the
offense.  However, the State proved the
extraneous offenses or bad acts with the uncontroverted testimony of A.R.A.,
A.A., and E.R.  Appellant neither
challenged their testimony about the offenses or bad acts nor presented any
conflicting evidence.  Appellant=s counsel did not cross-examine A.R.A.
or A.A.  While appellant=s counsel did cross-examine E.R. as to
whether she told Anderson
that appellant had sexually assaulted her, appellant=s
counsel did not cross-examine her about the offenses or bad acts.  Appellant does not contend that the evidence
was insufficient to prove beyond a reasonable doubt that he committed the
extraneous offenses or bad acts.  Based
on the uncontroverted evidence that appellant committed the offenses or bad
acts, there is nothing in the record to suggest that the jury would have disregarded
the extraneous offenses or bad acts or assessed a lesser punishment if the
trial court had given a reasonable-doubt instruction.  As such, the record does not demonstrate that
appellant suffered egregious harm as a result of the trial court=s omission of a reasonable-doubt
instruction.   See Allen,
47 S.W.3d at 52-53 (finding no egregious harm from the trial court=s omission of a reasonable-doubt
instruction because, among other things, the State presented clear-cut evidence
that the defendant committed the extraneous offenses); Arnold v. State,
7 S.W.3d 832, 835 (Tex. App.CEastland
1999, pet. ref=d)
(finding no egregious harm because the defendant did not challenge the
sufficiency of the evidence establishing that he committed the extraneous
offenses); Gholson v. State, 5 S.W.3d 266, 271 (Tex. App.CHouston [14th Dist.] 1999, pet ref=d) (holding that the defendant did not
show egregious harm from the trial court=s
omission of a reasonable-doubt instruction because the State proved the extraneous
offense with uncontroverted evidence and the defendant did not contend that the
evidence was insufficient to prove beyond a reasonable doubt that he committed
the extraneous offense).








The State presented additional evidence during the
punishment phase.  S.J.=s father testified about the
long-lasting effects of the crime on S.J. 
He said that S.J. had been changed permanently as a result of appellant=s commission of the offense; that S.J.
was scared to go by her window because she thought appellant would come through
it; that S.J. was scared to death of appellant; and that S.J. would have to
deal with the consequences of appellant=s
acts forever.  S.J.=s counselor also testified about the
effects of the crime on S.J.  She said
that “it will always be with her.”  She
also said that the crime had affected S.J.=s
self-esteem and her ability to trust others. 
S.J.=s father
and counselor gave compelling testimony for the imposition of the maximum
sentence for the offense.  The State also
presented evidence of appellant=s
criminal record.  Specifically, the State
introduced evidence of five prior misdemeanor convictions.  The jury could properly consider appellant=s misdemeanor convictions without a
reasonable-doubt instruction.  Bluitt
v. State, 137 S.W.3d 51, 54 (Tex.
Crim. App. 2004).  The prosecutor=s closing argument during the punishment
phase focused on S.J. and an appropriate punishment for what appellant did to
S.J.  At one point during closing
argument, the prosecutor referred to “victims.” 
However, the prosecutor did not discuss the extraneous offenses or bad
acts involving A.R.A., A.A., and E.R. during closing argument.  

After reviewing the entire record, we cannot
conclude that the trial court=s
error in omitting a reasonable-doubt instruction resulted in egregious harm to
appellant.  Therefore, we overrule
appellant=s third
point of error.

                                                               This
Court=s Ruling

We affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

 

June 14, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]Appellant relies on James v. State, 47 S.W.3d
710 (Tex. App.CTexarkana 2001, no pet.).  In James, the State=s notice of extraneous acts evidence did not provide a
date for the alleged acts.  Rather, the notice
listed a number of witnesses and stated that their testimony would be Ain regard to sexual acts performed by the defendant
upon the witness when the witness was under the age of 17 years.@  47 S.W.3d at
714.  The court explained that the lack
of an approximate date for the acts in the notice was a serious defect and
that, in the absence of a general statement as to the time period that the
alleged acts occurred, the notice was inadequate for the defendant to identify
and investigate the alleged acts.  Id.  Therefore, the court concluded that the State=s notice failed to satisfy the date requirement set
forth in Article 37.07,  section
3(g).  Id. 
James is distinguishable from this cause.  In this cause, the State=s amended notice provided approximate dates for the alleged
extraneous offenses or bad acts.