Affirmed as Modified and Memorandum Opinion filed November 30,
2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00030-CR



 

Wesley Joel Smith, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the Criminal District
Court

Jefferson County, Texas

Trial Court Cause No. 97384



 

MEMORANDUM  OPINION

 

Appellant Wesley Joel Smith appeals after a jury convicted
him of murder for the death of Tonia Porras.  See Tex. Penal Code Ann. §
19.02(b)(1) (Vernon 2003).  Appellant was sentenced to imprisonment for 55
years and assessed a $10,000 fine.  We modify the judgment and affirm the
judgment of conviction as modified.[1]

BACKGROUND

Porras’s body was discovered on the floor of her
garage apartment in Beaumont, Texas, on November 5, 2005.  According to the
coroner, Porras was rendered unconscious by blunt-force trauma to her head.  Her
head and wrists were bound with duct tape; an extension cord was wrapped tightly
around her neck; and she had been stabbed with a knife at least 26 times.  

Police immediately identified Corey Schuff, Porras’s
ex-boyfriend, as a suspect in the investigation of Porras’s murder.  Schuff was
identified because of his threats to strangle, rape, and kill Porras. 
Authorities also traced the suspected getaway car, a green Camaro, to Schuff.  

Schuff and appellant were close friends and members
of the same gang.  When questioned by police about Porras’s murder, appellant initially
denied any first-hand knowledge.  In a written statement dated November 10,
2005, appellant stated that his only knowledge of the crime came from an
acquaintance and the local newspaper.  He told investigators from the Jefferson
County Sherriff’s Department that he suspected Schuff “may have been the one
that killed Tonia.”  Appellant stated that Schuff had left the area in a car provided
by appellant on the night of Porras’s murder.   

Appellant gave a second written statement to the
Jefferson County Sherriff’s Department dated December 2, 2005, in which he described
Schuff as his “very best friend in the world” whom he loved “like a blood
brother.”  Appellant stated that he and Schuff both were members of the same
gang.  Appellant stated that Schuff drove to appellant’s home in the green
Camaro on November 2 and asked appellant to listen to a voicemail on Schuff’s
phone.  According to appellant, the voicemail captured a conversation in which Porras
and an ex-gang member discussed a plan to kill Schuff.  After they listened to
the voicemail, Schuff told appellant he was leaving to visit a friend in
Louisiana; Schuff showed up at appellant’s home later that night covered in
blood.  According to appellant’s second statement, Schuff said he “flipped
out[,] . . . knocked Tonia out and then . . . went crazy and started stabbing
her.”  Appellant stated that he gave Schuff the keys to a car and $100 to “get
away.”  Appellant again denied any role in the murder; he stated that when a
gang member ordered him to burn the Camaro, appellant had “refused to go
anywhere around that car.” 

            Appellant gave a
third and final written statement to the Jefferson County Sherriff’s Department
on December 13, 2005.  In it, he elaborated upon and contradicted certain
portions of his two prior statements.  Appellant stated that he and Schuff had
been instructed to find the ex-gang member and “deliver him” to Houston to be
disciplined by gang leadership.  Appellant then described the events that
unfolded on November 2:

            Corey and I then left in the green Camaro. . .
.  Corey then headed toward Port Acres because he had reason to believe that [the
ex-gang member] was sighted in the area . . . .  Once at this house, I remember
it being a two-story with a long driveway.  Corey took out a long silver-colored
maglight from the [C]amaro and ran upstairs while I waited outside.  I was
holding a baseball bat because I was under the impression that [the ex-gang
member] would be there.  At the time, I was standing near several cars that
were in the driveway.  I then heard a loud commotion from the upstairs room.  I
waited about two minutes before I ran up the stairs.  When I opened the door I
saw Corey stabbing Tonia.  I knew it was Tonia because of her long black hair
and small body frame.  Corey thrust a knife into her midsection at least
twice.  She was lying on the ground in a fetal position and was motionless. 
Tonia’s face and wrists were bound with duct tape and there was blood
everywhere (Tonia’s body, floor, and Corey’s clothing).  I was only inside for
a matter of seconds and never left the area of the door before Corey told me to
go back downstairs.  I distinctly remember that no one else was in the room and
it was clearly lighted.  Before leaving, I used my shirt to wipe my
fingerprints off the outside doorknob.  About a minute and a half later, Corey
came back.  He was now carrying the same maglight and a brown plastic grocery
bag.  Corey got in the front passenger seat and asked me to drive. . . . 
Within a mile or so from the house, Corey threw the knife he stabbed Tonia
with, his flashlight, and my bat from the [C]amaro. . . .

            While traveling to my house, Corey called
someone, and . . . explained that we went out to find [the ex-gang member], but
ran into Tonia instead.  Corey then told the person on the other end that he
killed Tonia. . . .  I agreed to give him my stepson’s maroon Chevrolet
Beretta. . . .  I then gave Corey one hundred dollars. . . .

            Before leaving, Corey asked me to take the
[C]amaro to [another gang member who] was supposed to destroy it.  Later this
same night I took the [C]amaro to [the other gang member to be destroyed]. . .
.

            . . .  I did not
take any part in the assault or murder of Tonia and would be willing to testify
against Corey Schuff.

Investigators found no trace of appellant’s DNA on a
knife that was discovered on the property where Porras’s garage apartment was
located; they also did not find appellant’s DNA on the electrical cord or duct
tape wrapped around Porras, or on Porras’s body.  Investigators found no
evidence of Porras’s DNA on appellant, in his house, or on the baseball bat he held
while standing in Porras’s driveway.  Although Schuff’s fingerprints were
discovered inside the apartment, appellant’s were not.  DNA expert Jane Burgett
testified for the State and opined that appellant could not be excluded as a
“minor contributor” of DNA left on a roll of duct tape discovered near Porras’s
feet inside the apartment.  

At trial, the jury was charged as follows:

            Now if you believe
from the evidence beyond a reasonable doubt that in Jefferson County, Texas, on
or about November 2, 2005, the defendant Wesley Joel Smith, either acting alone
or as a party, as that term is defined in these Instructions, did then and
there intentionally or knowingly cause the death of an individual, namely: Tonia Lynn Porras . . . by stabbing and
cutting [her] with a deadly weapon, to-wit: a knife, that in the manner of its
use and intended use was capable of causing serious bodily injury or death, you
shall find the defendant GUILTY of the offense of Murder.

The jury found appellant guilty of murder “as alleged
in the indictment,” sentenced him to confinement for 55 years, and assessed a
$10,000 fine.[2] 
The trial court’s November 21, 2008 judgment included a deadly weapon finding
against appellant.  Appellant filed a motion for new trial, which was overruled
by operation of law.

Appellant raises fourteen issues on appeal.  In
support of these issues, appellant argues that (1) the State’s DNA evidence is
unreliable and other evidence is insufficient to prove his participation in the
murder; (2) the State violated his constitutional rights because the State’s
prosecution of appellant was inconsistent with its prosecution of Schuff; (3)
the trial court erroneously admitted evidence regarding a phone call Porras
made to police several days before she was murdered; (4) the jury charge
contains errors; and (5) the trial court erred  by entering a deadly weapon
finding against appellant.  

ANALYSIS

I.         Sufficiency of
the Evidence 

Appellant argues in Issues 12 and 13 that the
evidence is legally and factually insufficient to support his conviction.  

We address appellant’s sufficiency challenges under a
single standard for evaluating legal sufficiency of the evidence.  See
Brooks v. State, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App.
Oct. 6, 2010) (plurality opinion) (appropriate standard of review for
sufficiency of the evidence considers “all evidence in the light most favorable
to the verdict” to determine whether a jury was “rationally justified in
finding guilt beyond a reasonable doubt”); id. at *15 (Cochran, J.,
concurring) (concluding that a separate factual sufficiency standard should
no longer apply in reviewing sufficiency of evidence supporting a criminal
conviction).

A person commits murder if he “intentionally or
knowingly causes the death of an individual.”  Tex. Penal Code Ann. §
19.02(b)(1).  Additionally, “[a] person is criminally responsible as a party to
an offense if the offense is committed by his own conduct, by the conduct of
another for which he is criminally responsible, or by both.”  Id. §
7.01(a) (Vernon 2003).  Criminal responsibility exists when the defendant,
“acting with intent to promote or assist the commission of the offense . . .
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense . . . .”  Id. § 7.02(a)(2).  

The indictment and jury charge allowed the jury to
convict appellant as a primary actor or as a party.  When the defendant is not
the primary actor, the State must prove 
(1) conduct constituting an offense; and (2) an act by the defendant done with
the intent to promote or assist such conduct.  Beier v. State, 687
S.W.2d 2, 3 (Tex. Crim. App. 1985).

“Evidence is sufficient to convict the defendant under
the law of parties where he is physically present at the commission of the
offense, and encourages the commission of the offense either by words or other
agreement.”  Id. at 3.  “In determining whether the accused participated
as a party, the court may look to events occurring before, during and after the
commission of the offense, and may rely on actions of the defendant which show
an understanding and common design to do the prohibited act.”  Id. at
4.  “Circumstantial evidence may be used to prove one is a party to an
offense.”  Id.  “Since an agreement between parties to act together in a
common design can seldom be proved by words, the State often must rely on the
actions of the parties, shown by direct or circumstantial evidence, to
establish an understanding or a common design to commit the offense.”  Miller
v. State, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref’d).  “[W]hile
mere presence at the scene, or even flight, is not enough to sustain a
conviction, such facts may be considered in determining whether an appellant
was a party to the offense.”  Id. (citing Valdez v. State, 877
S.W.2d 71, 74 (Tex. Crim. App. 1981) (op. on reh’g), and Guillory v. State,
877 S.W.2d 71, 74 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d)).

  Appellant’s sufficiency challenge focuses primarily
on the State’s use of expert testimony from Burgett linking appellant to the
roll of duct tape found next to Porras’s body.  Although appellant disputed
aspects of Burgett’s methodology at trial via cross- examination and competing
testimony proffered by his own expert, appellant did not object to the
admission of Burgett’s testimony in the trial court.  See Davis v. State,
313 S.W.3d 317, 352 (Tex. Crim. App. 2010).[3] 
In any event, “all evidence admitted at trial — including improperly
admitted evidence — is considered in a legal sufficiency review.”  Wilson v.
State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) (original emphasis); see
also Brooks, 2010 WL 3894613, at * 8 (reviewing courts consider “all
evidence in the light most favorable to the verdict” when addressing a
sufficiency challenge).  Therefore, we consider Burgett’s expert testimony in
determining whether legally sufficient evidence supports appellant’s
conviction. 

A.        DNA Expert Testimony

Burgett testified without objection regarding her
qualifications and credentials as a DNA expert.  Burgett testified that she
followed DPS Crime Laboratory protocol in calculating the DNA results, and that
the protocol had been tendered to appellant.  Burgett testified regarding the
Texas DPS Crime Laboratory techniques used in DNA collection and
amplification.  Burgett explained the DPS Crime Laboratory protocol that
governed her order of testing, method of handling, and amplification of DNA
samples.  Burgett explained the process of DNA analysis, in which experts
compare samples to determine whether certain individuals can be excluded as
contributors of DNA recovered in investigations.  

Burgett testified without objection regarding the
uncompromised chain of evidence for the duct tape from which the DNA samples in
this case were taken.  Burgett testified that the duct tape bindings taken from
Porras’s body contained no DNA from Schuff or appellant.  Burgett testified
that she tested three locations on the duct tape roll found next to Porras’s
body, which she described by holding the roll horizontally so that the sticky
“edges” of the roll were parallel to the floor: (1) an apparent blood stain on
the gray non-sticky side of the tape; (2) the non-stained surface of the “top”
sticky edge of the roll; and (2) the non-stained surface of the “bottom” sticky
edge of the roll.  

Burgett testified that Porras could not be excluded
from the blood stain DNA, which belonged to a female.  Burgett testified that
the DNA sample from the “top” and “bottom” sticky edges contained a mixture of
more than two people.  Burgett testified that appellant could not be excluded
from 15 genetic markers from the sample taken from the “top” sticky edge of the
roll, and appellant could not be excluded from eight markers from the sample
taken from the “bottom” sticky edge of the roll.  Burgett explained that the
probability that an unrelated person selected at random could be a contributor
for the DNA on the “top” sticky edge of the roll is 1 in 2,350,000 for
Caucasians, and the probability that an unrelated person selected at random
could be a contributor for the DNA on the “bottom” sticky edge of the roll was
1 in 4214 for Caucasians.[4] 
Burgett confirmed that appellant is Caucasian.  

On cross-examination, Burgett testified that the
“peaks” on an electropherogram chart indicate major and minor contributors of
DNA left on the roll of duct tape.  Burgett testified that she initially
assumed that the major female contributor was Porras, and that there was only
one other minor “foreign” contributor.  Once Burgett compared the known DNA
profiles of Porras, Schuff, and appellant to the samples, Burgett concluded
that the “foreign” profile was based on a sample with three contributors
instead of two.  

Appellant proffered his own DNA expert, Tim
Kupferschmid.  Kupferschmid testified that he would consider the minor
contributor DNA profiles inconclusive because the sample level was low. 
Kupferschmid testified that he would have done two amplifications of the sample
for such a low-level mixture to gauge the reliability of the profile of the
minor contributors.  Kupferschmid criticized Burgett’s use of the known samples
of Schuff and appellant to conclude that the “foreign” profile was a mixture of
two contributors.  Kupferschmid testified that based on only the highest
“peaks” on Burgett’s electropherogram chart, he calculated the probability that
an unrelated person selected at random could be a contributor for the DNA from
the “top” sticky edge of the roll is 1 in 47, and 1 in 3 for the DNA from the
“bottom” sticky edge of the roll.  Kupferschmid testified that these
probability calculations were so low that virtually anyone who handled the roll
could have been a contributor, including the store employee who originally sold
the duct tape.

B.        Other Evidence 

In addition to discounting the State’s DNA evidence,
appellant also contends that other evidence in the record limits his role to
that of a mere “accessory after the fact.”  

Appellant contends that the record contains no
evidence of appellant’s motive and intent to murder Porras, or to assist Schuff
in murdering her.  See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim.
App. 2004) (“Motive is a significant circumstance indicating guilt.  Intent may
also be inferred from circumstantial evidence such as acts, words, and the
conduct of the appellant.”).  Appellant argues that Schuff had a motive to
murder his ex-girlfriend Porras out of jealousy based on evidence that Schuff
was angry because she had engaged in a sexual relationship with one of Schuff’s
friends.  Appellant also contends that he was present at the garage apartment
on November 2 only to help find the ex-gang member and deliver him to Houston —
not to kill Porras or to help Schuff kill her.  However, a rational trier of
fact could conclude that appellant had a motive and an intent to assist Schuff
in murdering Porras because appellant overheard a voicemail in which Porras
spoke with the ex-gang member about a plot to kill Schuff — appellant’s fellow gang
member, his “blood brother,” and his “very best friend in the world.”  See
Medina v. State, 7 S.W.3d 633, 636 n.1 (Tex. Crim. App. 1999) (en banc)
(“There was evidence that these murders were committed in revenge for the
murder of . . . a fellow gang member of appellant’s and his close friend.”).

Appellant’s multiple written statements to the police
provide significant evidence that a rational trier of fact could rely upon in
determining guilt.  Although appellant denied any first-hand knowledge of the murder
in his November 10 statement, appellant’s December 2 statement establishes that
appellant knew “Corey was very mad” about the recorded voicemail in which
Porras and the ex-gang member were overheard discussing a plot to kill Schuff. 
Appellant’s December 13 statement establishes that appellant (1) accompanied
Schuff to Porras’s home in the Camaro after they listened to the voicemail; (2)
was present at the garage apartment’s doorway and watched as Schuff repeatedly
stabbed Porras on the apartment floor; (3) did nothing to prevent or stop the
stabbing; (4) used his shirt to wipe his own fingerprints off of the outside
doorknob of the door leading to the garage apartment, and then left the doorway
when Schuff told him to go back downstairs; (5) drove Schuff from the murder
scene to appellant’s house in the Camaro while Schuff threw the murder weapon
and other items out of the car window; and (6) gave Schuff money and another
car so Schuff could escape to Houston.  A rational jury could have relied upon
this evidence to find that appellant was physically present during the offense
and encouraged the commission of the offense.  See Adams v. State, 180
S.W.3d 386, 417–418 (Tex. App.—Corpus Christi 2005, no pet.); see also
Miller, 83 S.W.3d at 315 (“The evidence supports a finding that Shane knew
how Skyler would react in most circumstances.  Shane did nothing to discourage
Skyler’s fatal reaction . . . .”).

A rational jury also could have concluded that there
was an understanding and a common design to murder Porras based on evidence
that appellant lied to police and assisted in concealing evidence.  See
Guevara, 152 S.W.3d at 50 (“Attempts to conceal incriminating evidence,
inconsistent statements, and implausible explanations to police are probative
of wrongful conduct and are also circumstances of guilt.  Lies about an actor’s
relationship with an accomplice are probative of unlawful acts.”); see also
Adams, 180 S.W.3d at 417.

This evidence would be sufficient to support
appellant’s conviction even if we did not consider the DNA evidence linking
appellant to the roll of duct tape found near Porras’s body.  See Guevara,
152 S.W.3d at 52 (“While each piece of evidence [may lack] sufficiency in
isolation, the consistency of the evidence and the reasonable inferences drawn
therefrom were sufficient to support the verdict.”)  Additional evidence shows
that the color, size, construction, fibers, and adhesive of the duct tape roll
found near Porras’s body all were consistent with the duct tape used to bind
Porras’s hands and wrap her head before she was stabbed.  From this evidence and
the DNA link to appellant, a rational trier of fact could have concluded that
appellant provided equipment used or intended for use in subduing and murdering
Porras.  Such an action also supports a conviction as a party to murder.  See
Adams, 180 S.W.3d at 416–17 (evidence that appellant gave a ribbon to
assailant for use in strangling victim supported appellant’s conviction as a
party to murder under section 19.02(b)(1) of the Texas Penal Code). 

Proof that the DNA was placed on the duct tape roll
while Schuff was attacking Porras is not required to support a conviction based
on party liability.  See Guevara, 152 S.W.3d at 51–52.  In Guevara,
the Court of Criminal Appeals addressed an argument that “in order to be
convicted as a party to the murder, there must be proof that [the appellant] .
. . was assisting in the commission of the offense at the time it was actually
committed and that he had knowledge that he was assisting in the commission of
the offense.”  Id. at 51.  The court rejected this argument because “the
Penal Code does not require that the party actually participate in the
commission of the offense to be criminally responsible.”  Id. at 51–52.       

We conclude that this constellation of evidence, when
viewed in the light most favorable to the verdict, would allow a rational trier
of fact to find the essential elements of the crime beyond a reasonable doubt. 
Accordingly, we overrule appellant’s issues regarding the sufficiency of the
evidence.

II.        State’s Prosecution
of Schuff and Appellant 

Appellant argues in Issues 5 and 7 that the State
violated his Fourteenth Amendment right to due process and his Sixth Amendment
right to a fair trial by relying upon theories at his trial that were
inconsistent with the theories relied upon at Schuff’s trial.  Appellant
complains in Issue 6 that the State violated his Fourteenth Amendment due process
rights by materially misrepresenting facts at his trial.

In support of these issues, appellant cites to the
record from Schuff’s trial to argue (1) evidence of “torture” was used at
appellant’s trial but not at Schuff’s trial; (2) the State focused more heavily
on Schuff’s motive and intent to murder Porras in Schuff’s trial; and (3) DNA
evidence linking appellant to the duct tape at Schuff’s trial shows a weaker
match than the evidence admitted at appellant’s trial.  

None of appellant’s arguments regarding the State’s
prosecution of Schuff were raised in appellant’s motion for new trial, and
appellant did not present the record from Schuff’s case to the trial court for review. 
Appellant was required to present these issues in a motion for new trial so
that any evidence necessary to support his arguments could be addressed at a
hearing.  See Tex. R. App. P. 21.2 (“A motion for new trial is a
prerequisite to presenting a point of error on appeal . . . when necessary to
adduce facts not in the record.”); Dixon v. State, 64 S.W.3d 469, 474–75
(Tex. App.—Amarillo 2001, pet. ref’d) (citing Carranza v. State, 960
S.W.2d 76, 78–79 (Tex. Crim. App. 1998)) (declining to find jury misconduct
from facts outside the record because appellant did not present additional
evidence of misconduct to the trial court as part of motion for new trial).  

To preserve an issue for review on appeal, parties
must make a timely complaint to the trial court and obtain a ruling.  See Tex.
R. App. P. 33.1.  Without preservation, certain constitutional errors may be
waived.  See Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App.
1990); Rogers v. State, 640 S.W.2d 248, 263–64 (Tex. Crim. App. 1981)
(op. on second reh’g) (due process argument waived because it was not raised to
trial court).  Because appellant did not preserve the arguments raised in Issues
5 and 7 for review, we overrule appellant’s issues regarding asserted
inconsistencies between the State’s prosecution of Schuff and appellant.[5]

III.      Admission
of Evidence Regarding Request for Special Patrol 

Appellant
complains in Issues 9 and 10 that the trial court erred in admitting (1)
testimony from the police dispatcher who received Porras’s request for a
special patrol several days before she was murdered; and (2) the log sheet on
which the dispatcher recorded the time of the call, the number of the police unit
dispatched, and Porras’s name and address.  The trial court overruled
appellant’s hearsay objections and admitted the dispatcher’s testimony based on
hearsay exceptions for present sense impressions and excited utterances under
Texas Rules of Evidence 803(1) and (2).  The trial court admitted the log sheet
as a record of regularly conducted activity under Texas Rule of Evidence
803(6).  

Appellant also objected at trial that the
dispatcher’s testimony and the call log violate the Confrontation Clause because
the information Porras gave the dispatcher was testimonial in nature.  See
Crawford v. Washington, 541 U.S. 36, 68 (2004).  Appellant argues that
under Crawford, all evidence regarding the call was inadmissible because
Porras was unavailable for cross-examination.  Id. (“Where testimonial
evidence is at issue . . . the Sixth Amendment demands what the common law
required: unavailability and a prior opportunity for cross-examination.”)

We review a trial court’s decision to admit evidence
under an abuse of discretion standard.  Walters v. State, 247 S.W.3d
204, 217 (Tex. Crim. App. 2007).  The trial court abuses its discretion only
when the decision lies “outside the zone of reasonable disagreement.”  Id. 
We first address the trial court’s ruling on the dispatcher’s testimony.

A.        Hearsay Exceptions

Hearsay is an out-of-court statement offered into
evidence to prove the truth of the matter asserted.  See Tex. R. Evid.
801(d).  For hearsay to be admissible, it must fit into an exception.  See Tex.
R. Evid. 802.  An excited utterance under Texas Rule of Evidence 803(2)
constitutes one such exception.    

To qualify as an excited utterance, (1) the statement
must be the product of a startling occurrence that produces a state of nervous
excitement in the declarant and renders the utterance spontaneous; (2) this
state of excitement must be so dominant in the declarant’s mind that there is
no time or opportunity to contrive or misrepresent; and 
(3) the statement must relate to the circumstances of the occurrence preceding
it.  Kesaria v. State, 148 S.W.3d 634, 642 (Tex. App.—Houston [14th
Dist.] 2004), aff’d, 189 S.W.3d 279 (Tex. Crim. App. 2006).  The pivotal
inquiry in deciding whether a statement is an excited utterance is “‘whether
the declarant was still dominated by the emotions, excitement, fear, or pain of
the event.’”  Id. (quoting King v. State, 953 S.W.2d 266, 269
(Tex. Crim. App. 1997)).  

The dispatcher testified:

A:  [Porras] told me that she was afraid that [Schuff] was
going to kill her.  He had beat her up before, she told me; she definitely
believed he was going to kill her.  She said that.

Q:  Did she relate to you anything regarding [Schuff’s]
recent release from custody?

A:  She told me that she had been told that he had been
released from Harris County, and that she knew he was going to be coming over
here to kill her.  

                        *                                              *                                              *

Q:  Did she indicate that the release from custody had been
recent?

A:  Yeah.  She said — yes, sir, she said that it was
recent.  I don’t know if it — I don’t remember her saying it was that day.  I
don’t know that, but it was recent.

Q:  But she told you that she was afraid of him; is that
correct?

A:  She told me that more than once.

Q:  That — did she ever tell you that he had threatened her
in any fashion?

A:  I believe he promised her he would do it.  She said
that he was going to do it.

                        *                                              *                                              *

Q:  Did it appear to you that her emotional state was a
result of him having been released from Harris County Jail?

A:  Yes.  Yes.

Q:  And was it in that emotional state that she was making
statements and utterances to you while still under the influence of that
condition, him having been released from Harris County Jail?

A:  Yes, she knew he was free
to come over here.  

A threat to kill the declarant can constitute an
exciting event.  See, e.g., Hayden v. State, 155 S.W.3d 640, 647
(Tex. App.—Eastland 2005, pet. ref’d) (trial court did not err in admitting
excited utterance communicating defendant’s threat on declarant’s life); Bondurant
v. State, 956 S.W.2d 762, 764–65 (Tex. App.—Fort Worth 1997, pet. ref’d)
(trial court did not err in admitting excited utterance communicating
defendant’s threat on declarant’s life after declarant learned defendant had
committed murder previously).

In this case, a prior threat to kill, combined with
the knowledge that the threatening party has been released recently from
custody, constituted an exciting event.  At the time the statements were made, the
dispatcher testified that she would characterize the amount of fear in Porras’s
voice as an “eight” on a scale of one to ten; the dispatcher testified that she
would rank callers as a “nine” or “ten” only if they were so distraught that
they were unintelligible.  The dispatcher testified that Porras’s voice was
shaking throughout the conversation, and that there was no doubt in the
dispatcher’s mind that Porras was “scared to death.”  Porras’s statements — that
she needed a special patrol because Schuff had been abusive in the past, had
threatened to kill her, and was being released from jail — all related to the
exciting event.  Based on the record, we conclude that the trial court acted
within its discretion to admit the testimony at issue under the exception for
excited utterances.

B.        Confrontation Clause

The Sixth Amendment right of confrontation applies to
the states by virtue of the Fourteenth Amendment.  Pointer v. State, 380
U.S. 400, 403 (1965); Langham v. State, 305 S.W.3d 568, 575 (Tex. Crim.
App. 2010).  Under Crawford, 541 U.S. at 68, the Confrontation Clause
requires the State to show that an out-of-court, testimonial statement offered
against an accused was made by a declarant who (1) is presently unavailable;
and (2) was subject to cross-examination by the accused.  Langham, 305
S.W.3d at 575–76 (citing Crawford, 541 U.S. at 59, 68).  Out-of-court
statements made to police are not considered testimonial if they are made “‘to
enable police assistance to meet an ongoing emergency’” rather than “‘to
establish or prove past events potentially relevant to later criminal
prosecution.’”  Vinson v. State, 252 S.W.3d 336, 338 (Tex. Crim. App.
2008) (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)).  We
review de novo the trial court’s ruling on the testimonial nature of a
statement.  Langham, 305 S.W.3d at 576.

To determine whether statements are made during an
on-going emergency, we consider whether (1) the situation was still in
progress; (2) the questions sought to determine what was presently happening as
opposed to what happened in the past; (3) the primary purpose of the
questioning was to render aid rather than to memorialize a possible crime; (4)
the questioning was conducted in a separate location away from the alleged
attacker; and (5) the events were deliberately recounted in a step-by-step
fashion.  Vinson, 252 S.W.3d at 339.  These factors are non-exhaustive. 
Id.

Based on these factors, we conclude the trial court
did not err in ruling that the information provided by Porras to the police
dispatcher was non-testimonial under Crawford.  Although Porras placed
the call on the non-emergency police line, the request for a special patrol was
made to address what the dispatcher deemed “a legitimate threat” then presently
faced by Porras.  The information provided by Porras involved past events, but
these events were relevant to whether Schuff’s promise to kill her constituted
an on-going emergency at that time.  Porras’s purpose in conveying this
information was apparently for the dispatcher to render aid, not to memorialize
the fact that Schuff had been abusive or incarcerated in the past.  Although
the alleged attacker was not present, the information was given in anticipation
of his possible arrival rather than after Porras’s safe removal from the
emergency.  Porras did not give a step-by-step recounting of a crime, but
instead offered necessary information for the dispatcher to evaluate the seriousness
of the emergency and respond to aid Porras.  This non-testimonial evidence does
not implicate the Confrontation Clause under these circumstances.  The trial
court acted within its discretion in admitting the dispatcher’s testimony into
evidence.

C.        Call Log

Having concluded that the information provided to the
dispatcher was non-testimonial, we must address whether the trial court
properly admitted the call log itself.  The call log contained the following
relevant information:

Unit Called: 120

Time: 0255

Remarks: Sp. Patrol – 2065
Hillebrandt Acres, Tonia Porras

Even if we presume for the sake of argument that the
trial court erred in admitting the call log under the hearsay exception in Texas
Rule of Evidence 803(6), any such error was harmless.  We reverse for
non-constitutional errors only if the substantial rights of appellant are
affected.  See Tex. R. App. P. 44.2(b).  Substantial rights are not
affected by the erroneous admission of evidence if the error did not influence
the jury, or had only a slight effect.  Motilla v. State, 78 S.W.3d 352,
355 (Tex. Crim. App. 2002).  In making this determination, we consider
everything in the record, including (1) any testimony or physical evidence
admitted for the jury’s consideration; (2) the nature of the evidence admitted
for the jury’s consideration; (3) the nature of the evidence supporting the
verdict; and (4) the character of the alleged error and how it might be
considered in connection with other evidence in the case.  Id.

We have determined that the trial court did not err
in admitting the dispatcher’s testimony.  The call log contained the same
information as the dispatcher’s testimony, except that the call log also included
the number of the police unit dispatched.  Thus, the nature of the evidence was
almost entirely cumulative.  Because the unit number was not relevant to the
State’s case, it is unlikely that the jury considered it at all in connection
with the other evidence of appellant’s guilt.  We do not believe the admission
of the call log had even a slight effect on the jury, and we conclude that any
error in admitting the call log was harmless.  For the reasons stated above, we
overrule Issues 9 and 10.

IV.      Jury Instructions

Appellant argues in Issues 8, 11, and 14 that the
trial court erred in failing to instruct the jury (1) to unanimously find
appellant guilty on a single theory of criminal liability; (2) that extraneous
offense evidence must be proven beyond a reasonable doubt; and (3) on the
voluntariness of appellant’s December 13, 2005 statement.

Our first duty in analyzing a jury-charge issue is to
decide whether error exists.  Ngo v. State, 175 S.W.3d 738, 743 (Tex.
Crim. App. 2005).  If we find error, then we analyze that error for harm.  Id. 
Preservation of charge error does not become an issue until we assess harm. 
Id.  The degree of harm necessary for reversal depends on whether the
appellant preserved the error by objection.  Id.  

A.        Unanimous Jury Finding on Theory of
Criminal Liability 

The jury was instructed that it could convict
appellant of murder for causing Porras’s death “either acting alone or as a
party, as that term is defined in these Instructions.”  Appellant claims the trial
court should have instructed the jury to unanimously decide between these two theories
of criminal liability.

It is proper for an indictment to allege different means
of committing the same offense and for the jury to be charged disjunctively.  See
Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (charge
properly listed two alternative underlying felonies to support capital murder
conviction).  When a trial court submits alternative theories supporting the accused’s
commission of the same offense to the jury in the disjunctive, it is
appropriate for the jury to return a general verdict if the evidence is
sufficient to support a finding under any of the theories submitted.  Id. 
Unanimity regarding the specific means by which an accused committed a crime is
not necessary.  Id.; see also Gamboa v. State, 296 S.W.3d 574,
583–84 (Tex. Crim. App. 2009) (discussing the “prevailing view” that alternate
legal theories supporting conviction for capital murder do not require
unanimity because “‘the trial court cannot impose multiple convictions and
sentences for variations of murder when only one person was killed.’” (quoting Ex
Parte Ervin, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999))).  

A jury is not required to choose unanimously between
alternative theories of primary or party liability for murder if (1) either
theory was proved; and (2) the alternate theories do not constitute multiple
criminal acts.  See, e.g., Randall v. State, 232 S.W.3d 285, 294
(Tex. App.—Beaumont 2007, pet. ref’d) (jury not required to choose unanimously between
theories of principal, party, or co-conspirator liability for murder); Holford
v. State, 177 S.W.3d 454, 461–62 (Tex. App.—Houston [1st Dist.] 2005, pet.
ref’d) (jury not required to choose unanimously between theories of primary or
party liability to convict appellant of capital murder); Hanson v. State,
55 S.W.3d 681, 693–95 (Tex. App.—Austin 2001, pet. ref’d) (jury not required to
choose unanimously between different theories of party liability for capital
murder “so long as either theory was proved” because different theories
supporting criminal liability for same murder do not constitute multiple
offenses).  Because the jury was not required to agree unanimously on the
method by which appellant incurred criminal liability for causing Porras’s
death, the trial court was not required to instruct the jury to find appellant
guilty unanimously according to one theory.

We overrule appellant’s issue regarding the unanimity
of the jury verdict.  

B.        Voluntariness of December 13, 2005
Statement

Appellant argues the trial court should have instructed
the jury on the voluntariness of the statement he gave to police on December
13, 2005.  Appellant claims that an FBI agent made promises to release
appellant from jail in exchange for the statement, and that this conduct
rendered his statement involuntary.

Constitutionally improper conduct of law enforcement
in obtaining a statement may render a statement involuntary and excludable.  See
Tex. Crim. Proc. Code Ann. art. 38.23 (Vernon 2005); Oursbourn v. State,
259 S.W.3d 159, 181–82 (Tex. Crim. App. 2008).  The trial court must instruct
the jury on voluntariness if the evidence presented to the jury raises a
voluntariness issue.  See Tex. Crim. Proc. Code Ann. arts. 38.22 § 6,
38.23 (Vernon 2005); Oursbourn, 259 S.W.3d at 175, 177 (some evidence on
voluntariness must be presented to the jury before either general or
constitutional voluntariness instruction should be given).  Appellant raised
his objections to the voluntariness of his December 13 statement to the trial
court in his motion to suppress.  The trial court overruled appellant’s
objections and found that the statement was voluntarily given and thus
admissible.  Appellant does not identify and we cannot locate any place in the
record where he presented evidence to the jury showing that law enforcement
promised to release him from jail in exchange for the December 13 statement.[6] 
Even if we assume without deciding that the alleged promises could constitute
improper police conduct, the trial court did not err in denying appellant’s
request for a jury instruction on voluntariness because appellant failed to
introduce evidence of such promises before the jury.  See id.

We overrule appellant’s issue regarding the trial
court’s denial of his request for a jury instruction on voluntariness.

C.        Extraneous Offense Evidence

Appellant argues that (1) evidence regarding his
disposal of the Camaro was extraneous offense evidence; and (2) the jury should
have been instructed that the extraneous offense had to be proven beyond a
reasonable doubt before the jury could consider it in assessing appellant’s
punishment.  

During the guilt-innocence phase of trial, the State
may not introduce evidence of extraneous offenses or bad acts to show action in
conformity therewith.  See Tex. R. Evid. 404(b).  An extraneous offense
is any act of misconduct, whether resulting in prosecution or not, that is not
shown in the charging papers.  Sansom v. State, 292 S.W.3d 112, 125
(Tex. App.—Houston [14th Dist.] 2008, pet. ref’d) (citing Rankin v. State,
953 S.W.2d 740, 741 (Tex. Crim. App. 1996)).  The trial court may admit
evidence of extraneous offenses for other purposes.  See Tex. R. Evid.
404(b).    

Evidence of extraneous offenses also may be admitted
during the punishment phase if the trial court deems the evidence relevant to
sentencing.  See Tex. Crim. Proc. Code Ann. art. 37.07 § 3(a)(1) (Vernon
2005).  When evidence of an extraneous offense is used in the punishment phase
of trial for the limited purpose of assessing punishment, the evidence must
prove beyond a reasonable doubt that the defendant committed the act alleged.  Id. 
If such evidence is introduced, the trial court must give the jury an instruction
regarding the reasonable doubt standard of proof.  Id. § 3(b); Huizar
v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (trial court must give
jury instruction on reasonable doubt standard for extraneous offense evidence
introduced at punishment phase even if parties do not request it).

The evidence at issue here regarding the appellant’s
disposal of the Camaro was admitted during the guilt-innocence phase of the
trial, and appellant did not object to it at that time.  During the punishment
phase, the State rested after stating that it relied on the case it presented
during the guilt-innocence phase.  Appellant re-urged the evidence that was
admitted in the guilt-innocence phase and rested.  Appellant did not request
and the trial court did not give a jury instruction on the reasonable doubt
standard of proof for extraneous offense evidence.

The Second Court of Appeals has held that if extraneous
offense evidence is before the jury, section 3(b) of article 37.07 requires
that the jurors receive the reasonable doubt instruction at punishment regardless
of whether such evidence was introduced at the guilt-innocence phase or the
punishment phase.  Allen v. State, 47 S.W.3d 47, 51–52 (Tex. App.—Fort
Worth 2001, pet. ref’d) (State’s specific reference to extraneous offense
evidence in its punishment phase argument, and language in jury charge
authorizing it to “take into consideration all the facts shown by the evidence,”
necessitated reasonable doubt instruction).  

The First Court of Appeals has held that extraneous
offense evidence admitted in the guilt-innocence phase does not require an
instruction on the reasonable doubt standard of proof unless it is actually
used or referenced at the punishment phase.  See Rayme v. State, 178
S.W.3d 21, 26 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (“We decline to
follow the holding in Allen requiring that a trial court sua sponte give
a [37.07] jury instruction any time extraneous offense evidence is admitted in
the trial . . . regardless of whether the extraneous offense evidence admitted
at the guilt-innocence phase is used or referenced in the punishment phase of
the trial.”).

We need not decide whether (1) the evidence at issue
was extraneous offense evidence; or (2) the State’s reliance during the
punishment phase on evidence introduced at the guilt-innocence stage required an
instruction on the reasonable doubt standard at the punishment phase.  When a
defendant does not preserve non-constitutional charge error with a timely trial
objection, we do not reverse unless the error was so harmful that the defendant
was denied a fair and impartial trial.  Arline v. State, 721 S.W.2d 348,
351 (Tex. Crim. App. 1986); see also Huizar, 12 S.W.3d at 484–85
(failure to give reasonable doubt instruction constitutes non-constitutional
error).  In other words, we reverse only if appellant suffered egregious harm
due to the error.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1985) (op. on reh’g).  Assuming without deciding that this was extraneous
offense evidence and that the trial court should have given such an instruction
in this case, the failure to include such an instruction did not cause
appellant egregious harm.  

Appellant was convicted of causing Porras’s death by
acting alone or as a party to her murder.  Evidence that appellant attempted to
conceal evidence by destroying the Camaro was only part of the evidence the
jury had to consider in assessing punishment.  The evidence also showed that
appellant was involved in violent gang activity; offered conflicting
information to police about his own involvement in the crime; and assisted Porras’s
murderer before, during, and after the crime.  At punishment, the State did not
emphasize or specifically make reference to the evidence regarding the Camaro
at punishment.  The jury assessed punishment at imprisonment for 55 years; it
could have assessed a maximum of 99 years or life imprisonment.  See
Tex. Penal Code Ann. §§ 19.02, 12.32 (Vernon 2003). 

Based on the record, we conclude that even if the
trial court erred by failing to instruct the jury regarding the burden of proof
for extraneous offenses, any such error did not egregiously harm appellant.  See,
e.g., Allen, 47 S.W.3d at 52–53 (considering the severity of the
crime and the range of punishment in assessing egregious harm when jury was not
instructed on reasonable doubt standard).

We overrule appellant’s issue regarding the burden of
proof instruction for extraneous offense evidence.

V.        Deadly Weapon
Finding

Appellant complains in Issues 1–4 that the jury’s verdict
cannot support the deadly weapon finding.  Appellant was indicted for
intentionally and knowingly causing the death of Porras “by stabbing and
cutting [her] with a deadly weapon, to-wit: a knife, that in the manner of its
use and intended use was capable of causing serious bodily injury and death.” 
The jury convicted appellant for “either acting alone or as a party” to the
crime “as alleged in the indictment.”  The trial court entered a deadly weapon
finding against appellant in the judgment.  

The trial court must enter an affirmative finding of
a deadly weapon when (1) the indictment alleges the use of a deadly weapon and
the jury finds the defendant guilty as charged in the indictment; (2) the
weapon is deadly per se; or (3) the jury affirmatively answers a special issue
on the matter.  Frazier v. State, 115 S.W.3d 743, 749 (Tex. App.—Beaumont
2003, no pet.) (citing Lafleur v. State, 106 S.W.3d 91, 93 (Tex. Crim.
App. 2003)).  A knife and a baseball bat are not deadly weapons per se. 
English v. State, 171 S.W.3d 625, 628 (Tex. App.—Houston [14th Dist.]
2005, no pet.) (baseball bat); Hatchett v. State, 930 S.W.2d 844, 848
(Tex. App.—Houston [14th Dist.] 1996, pet. ref’d) (knife).  The jury was not
asked to answer a special issue on the matter.  Thus, we must decide whether this
case falls into the first category.

When the
State bases its case on party liability, the trial court may enter a deadly
weapon finding only if the jury affirmatively finds that (1) the defendant was
a party to the offense; and (2) the defendant knew that a deadly weapon would
be used or exhibited during the commission of that offense.  See Tex.
Crim. Proc. Code Ann. art. 42.12, § 3g(a)(2) (Vernon 2006).  This court has
held that, even if the jury convicts a defendant only under the law of parties,
if in the indictment the State alleges the use or exhibition of a deadly weapon
during the commission of the offense, then the jury’s general “guilty” verdict
necessarily constitutes a finding that the defendant knew a deadly weapon would
be used or exhibited during the commission of the offense.  See Sarmiento v.
State, 93 S.W.3d 566, 568–70 (Tex. App.—Houston [14th Dist.] 2002, pet
ref’d) (en banc).  The Ninth Court of Appeals has held that when a jury
convicts an accused as a party to murder and in the indictment the State alleges
the use of a deadly weapon, a verdict of guilty “as alleged in the indictment” is
not an affirmative finding that the accused also knew a deadly weapon would be
used or exhibited during the offense.  See Frazier, 115 S.W.3d at
749–50.  

Research
reveals no precedent from the Court of Criminal Appeals resolving whether the
jury’s general verdict of “guilty” constitutes a finding that appellant knew a
deadly weapon would be used or exhibited during the commission of the offense. 
Cf. Lafleur, 106 S.W.3d at 98 (trial court may enter a deadly
weapon finding against defendant who is convicted according to application
paragraph for lesser included offense alleging defendant’s use of the same
deadly weapon as alleged in the indictment, even though application paragraph
does not reference the indictment).  The Supreme Court of Texas transferred
this appeal from the Ninth Court of Appeals to this court.  Unless we apply
precedent from the Ninth Court of Appeals, our decision regarding this issue
would be inconsistent with the precedent of the transferor court.  Compare
Frazier, 115 S.W.3d at 749–50, with Sarmiento, 93 S.W.3d at
568–70.  Therefore, we must decide this issue in accordance with precedent from
the Ninth Court of Appeals.  See Tex. R. App. P. 41.3.  Applying precedent
from the Ninth Court of Appeals, we conclude that the trial court erred in
entering a deadly weapon finding in the judgment.  Id.; Frazier,
115 S.W.3d at 749–50. 

We therefore grant appellant’s request for relief by
modifying the trial court’s judgment to delete the deadly weapon finding.  See
Frazier, 115 S.W.3d at 750.

CONCLUSION

            We grant
appellant’s request to modify the trial court’s judgment by deleting the deadly
weapon finding.  We affirm the trial court’s judgment as modified.

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Justices Yates, Frost,
and Boyce.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Appellant’s case was originally filed with the Ninth Court of Appeals and was
transferred to this court.  





[2]
Schuff was tried for Porras’s murder in a separate proceeding, convicted, and
sentenced to life in prison.  His judgment of conviction was modified on appeal
and affirmed as modified.  See Schuff v. Texas, No. 13-08-00023-CR, 2009
WL 3321023 (Tex. App.—Corpus Christi, Oct. 15, 2009, pet. dism’d as untimely
filed) (mem. op., not designated for publication).





[3]
Appellant contends that Burgett’s conclusions are scientifically unreliable. 
Appellant claims that (1) the DNA evidence could have been degraded by
hypothetical environmental contaminants before and after it was collected; (2)
Burgett exaggerated the statistical probability that appellant was a
contributor to the DNA left on the duct tape roll; (3) Burgett erroneously
referred to the DNA match as one of inclusion rather than exclusion; and (4)
appellant’s rebuttal expert revealed that Burgett’s testimony did not meet the
standard for admissibility of scientific evidence under Kelly v. State,
824 S.W.2d 568, 573–74 (Tex. Crim. App. 1992).  “Texas Rule of Evidence 705(c)
governs the reliability of expert testimony and states that ‘[i]f the court
determines that the underlying facts or data do not provide a sufficient basis
for the expert’s opinion under Rule 702 or 703, the opinion is inadmissible.’” 
Vela v. State, 209 S.W.3d 128, 133 (Tex. Crim. App. App. 2006) (quoting
Tex. R. Evid. 705(c)).  An objection to expert testimony is necessary for the
trial court to make a ruling on its admissibility.  See Tex. R. Evid.
103(a)(1); see also Davis, 313 S.W.3d at 352 (“Ordinarily, an objection
is required to preserve error for review” when appellant contends that an expert
witness employed an unreliable methodology.).  Appellant failed to object to
Burgett’s testimony on any of the grounds he argues on appeal.  Therefore, we
do not address appellant’s contention that Burgett’s expert testimony failed to
satisfy the governing standards for reliability and admissibility.  See
Davis, 313 S.W.3d at 352.





[4]
Over appellant’s objection, Burgett identified a transcription error that had
affected the initial calculations in her report regarding the sample taken from
the “bottom” sticky edge of the roll.  Burgett testified that when the error
was corrected, her recalculation reduced the statistical probability that
appellant left DNA material on the duct tape found next to Porras’s body. 
Burgett stated that this original error benefitted appellant by increasing the
likelihood that an unrelated person could have been a contributor to the DNA
material found in the sample.





[5]
The trial court in Schuff’s case rendered judgment on November 30, 2007.  See
Schuff, 2009 WL 3321023, at *7.  The trial court in appellant’s case
rendered judgment on November 21, 2008.  Appellant filed a motion in this court
to supplement the record before this court with the reporter’s record from
Schuff’s trial.  Putting aside whether this court properly could take notice of
the reporter’s record from an entirely separate case, the reporter’s record
from Schuff’s trial does not advance appellant’s petition because he did not
submit it to the trial court for consideration in conjunction with a motion for
new trial.  See Tex. R. App. P. 21.2.  Accordingly, we deny appellant’s
motion as moot.  Even if appellant had preserved these issues, appellant’s
arguments as briefed would not warrant reversal.  The State’s decision not to
call two witnesses from Schuff’s trial, whose testimony implicated Schuff in
the murder, did not conflict with the State’s prosecution of appellant as a
party to Schuff’s murder of Porras.  The recalculation of the DNA evidence
originally admitted in Schuff’s trial actually benefitted appellant by reducing
the statistical probability that the DNA belonged to appellant. 





[6]
The only evidence presented to the jury relating to the issues raised in
appellant’s motion to suppress is (1) testimony by Investigator Bruce Koch that
he was aware appellant’s wife was given money to relocate, although he had no
knowledge of whether it was related to appellant’s statement, and (2) testimony
by Detective Todd Richards that he knew the FBI had arranged for appellant’s
wife to relocate.  Appellant does not argue on appeal that the relocation
assistance affected the voluntariness of his statement.